**AMERICAN REAL ESTATE INSTITUTE, INC., Plaintiff-Appellant,**

v.

**ALABAMA REAL ESTATE COMMISSION, a public corporation, et al., Defendants-Appellees.**

No. 78–2545
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 2, 1979.

Ira De Ment, Montgomery, Ala., for plaintiff-appellant.

Smith, Bowman, Thagard, Crook & Culpepper, Thomas W. Thagard, Jr., David R. Boyd, Montgomery, Ala., Williams, Spurrier & Rice, George K. Williams, Huntsville, Ala., for defendants-appellees.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Before GOLDBERG, RONEY and TJO-FLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

American Real Estate Institute, Inc. (AREI) offers instruction for a fee to those seeking to be licensed as real estate salesmen and brokers in the state of Alabama. Loren Perdue is the principal stockholder of AREI and one of its instructors. In December 1977, AREI instituted this action under 42 U.S.C. § 1983 (1976), challenging on constitutional grounds four regulations promulgated by the Alabama Real Estate Commission (Commission). We are asked in this appeal to declare invalid two of the regulations upheld by the district court. We decline to do so and affirm.

The Commission is authorized by statute [1] to promulgate regulations regarding courses of instruction given to those seeking a real estate license. The Commission's regulations questioned here provide:

*QUALIFICATIONS FOR ALL INSTRUCTORS:*

1. All instructors must agree to attend orientation courses offered by the Alabama Real Estate Commission.
2. All instructors should be college graduates.
3. All instructors will be periodically evaluated and approved by the Alabama Real Estate Commission.
4. All instructors must have approval of the Alabama Real Estate Commission.

*ADDITIONAL COLLEGE AND UNIVERSITY INSTRUCTORS:*

1. College and University Instructors will be qualified when certified by their respective educational institutions.

*ADDITIONAL NON–UNIVERSITY AND NON–COLLEGE INSTRUCTORS:*

1. All instructors other than a college or university instructor should be licensed for a minimum of five years in Alabama with a minimum of two years as a broker or principal in a firm, except for guest lecturers on specific subjects such as law, accounting, taxes, title insurance, mortgage brokerage, banking, or insurance;

AND,

2. He/she should have varied experience and knowledge in at least five of the following areas of the real estate field:

| | |
|---|---|
| Residential sales | Commercial sales |
| Property management | Mortgage loans |
| Insurance | Appraisal |
| Construction | |

AND,

3. He should have a letter of recommendation from at least three real estate brokers concerning competence, character, and ability of instructor in the real estate field.

*[CONTINUITY REGULATION:]*

1. All schools will have a definite beginning and ending date for each course; i. e., all students will begin and end the course together.

2. All schools will send to the Commission information concerning the exact location, times and dates of the courses prior to the beginning of said course. This is to be done each time a new course begins.

---

1. The Code of Alabama, § 34–27–6 (1975), provides:

> The commission is hereby authorized and empowered to promulgate rules and regulations relative to the establishment and conducting of any course of study or instruction which is designed to satisfy the educational requirements of section 34–27–32. As a condition to meeting the requirements of section 34–27–32, any such course, course of study or instruction shall be established and con-

ducted in accordance with the rules and regulations of the commission.

Section 34–27–8 provides:

> The commission may act by a majority of the members thereof, and authority is hereby given to the commission to adopt, fix and establish all rules and regulations in its opinion necessary for the conduct of its business, the holding of hearings before it and otherwise generally for the enforcement and administration of the provisions of this chapter.

3. All schools are to send a roster of students to the Commission no later than 2 weeks after beginning of the course.

. . .

(c) All courses must be a minimum of eight (8) weeks in length, must meet on a weekly basis, and contain a minimum of forty-five (45) classroom hours.

AREI contends that the qualifications for instructors impermissibly discriminate against those teaching in private schools, such as the one it operates, and cannot pass muster under the equal protection clause of the fourteenth amendment. It argues that the distinction made between colleges and universities and other schools amounts to nothing more than class legislation, arbitrarily discriminating in favor of some at the expense of others.

The district court ruled that the disparate treatment of instructors had a rational relationship to a legitimate state interest in assuring adequate instruction in a business burdened with a public interest. The court recognized that on the college level there are pressures that cause the colleges to promulgate their own regulations consistent with the public interest; the same pressures may not come to bear on schools like AREI's.

▮ We think the district court properly applied the equal protection test laid down by the Supreme Court in *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), in declining to find that the discriminatory features of the regulations in question were impermissible. In *McGowan,* the Court said:

Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some ine-

quality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*Id.* at 425–26, 81 S.Ct. at 1105.

In *New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), the Court spoke directly to the subject of economic regulation in language fully supportive of the district court's decision here:

When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines; in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

*Id.* at 303–04, 96 S.Ct. 2516–17 (citations omitted).

In the case before us, no suspect class or fundamental personal rights are involved. What discrimination may exist is not invidious; the Commission's measures are rationally related to the state's legitimate interest in regulating the real estate business.

AREI and Perdue complain that the eight-weeks continuity regulation would necessitate the restructuring of the AREI course and the alteration of their teaching schedules. This burden, coupled with the allegedly arbitrary and capricious requirement that a definite beginning and ending date be established for each course, is said to be offensive to due process. The district court found the continuity regulation to be a desirable administrative convenience, a method by which the number of applicants for real estate licenses can be known in advance and processing facilitated.

In *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), the Supreme Court addressed the role of the due process clause in present day litigation over the validity of business regulations:

> The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. We emphasize again what Chief Justice Waite said in *Munn v. Illinois,* 94 U.S. 113, 134, 24 L.Ed. 77, "For protection against abuses by legislatures the people must resort to the polls, not to the courts."

*Id.* at 488, 75 S.Ct. at 464–65 (citations omitted). The regulations at issue were adopted after recommendation from a study committee. The Commission felt that students should receive instruction in real estate fundamentals before proceeding to more difficult concepts. The regulations also promoted administrative convenience in licensing. In sum, the measures have a rational basis. A due process violation has not been shown.

AFFIRMED.