The ALABAMA STATE FEDERATION OF TEACHERS, AFL–CIO, etc., et al., Plaintiffs-Appellants,

v.

Fob JAMES, etc., et al., Defendants-Appellees.

No. 80–7400.

United States Court of Appeals, Fifth Circuit. Unit B

Sept. 17, 1981.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiffs-appellants.

Philip C. Davis, Linda Breland, Asst. Attys. Gen., Montgomery, Ala., for defendants-appellees.

Kenneth L. Thomas, Montgomery, Ala., for Landers.

Before MORGAN, RONEY and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Alabama State Federation of Teachers, AFL–CIO [ASFT], a teachers' representational organization, challenges several Alabama statutes conferring certain benefits upon a rival teachers' organization, the Alabama Education Association [AEA],[1] on the ground that such statutes deny appellants[2] the equal protection of the laws guaranteed by the fourteenth amendment and burden their freedom of association guaranteed by the first amendment. The statutes in question empower designated AEA officers to serve on both the Board of Control of the Alabama Teachers' Retirement System and the State Tenure Commission and permit the AEA president to appoint two teachers to the State Tenure Commission. The challenged statutes also provide that non-teaching administrative personnel employed by the AEA are eligible to participate in the State Teachers' Retirement System but do not confer similar eligibility upon such personnel employed by the ASFT. Appellants argue that by conferring certain benefits upon the AEA and not the ASFT, such statutes distinguish between the two organizations without a rational basis.[3] Further-

more, appellants contend that these statutes have rendered the ASFT a "second-class" teachers' representational organization in Alabama, thus burdening members' freedom of association and the organization's ability to represent its members. The district court rejected both claims. We affirm.

## I. *Facts*

Alabama employs approximately 40,000 public school teachers, supervisory and support personnel. Both the AEA and ASFT represent such personnel, although the ASFT excludes principals and other supervisory school personnel from membership. The AEA was formed in 1856[4] and has approximately 35,000 members. The ASFT was formed in 1971 and has between 2,500 and 3,000 members. The AEA does not exclude from membership ASFT members; some ASFT members belong to the AEA, and the AEA is not informed as to which members are ASFT members.

. The challenged Alabama statutes provide that the Executive Secretary of the AEA serve ex officio as one of eleven trustees constituting the Board of Control of the Alabama Teachers' Retirement System[5] and as ex officio secretary to the State Tenure Commission,[6] and that the President of the AEA appoint two certified, tenured classroom teachers to the Tenure Commission.[7] Historically, such appointees have always been AEA members. The Tenure Commission hears and determines appeals

1. The AEA and ASFT are both offspring of national teacher organizations, the National Education Association (NEA) and American Federation of Teachers (AFT) respectively. The ASFT refers to itself as a union; the AEA specifically disclaims this appellation. The essential nature of the organizations is nevertheless similar.

2. Individual members, an officer, and an employee of the ASFT have joined with the union as plaintiffs-appellants.

3. At trial, *appellants argued that because the* challenged statutes infringed a fundamental right, the freedom of association, "strict scrutiny" was the appropriate equal protection standard of review. Appellants, however, have abandoned this contention on appeal, pursuing

only a "rational basis" attack. We therefore confine our review to the "rational basis" standard. *Cf. Memphis American Fed. of Teachers, Local 2032 v. Board of Education*, 534 F.2d 699, 703 (6th Cir. 1976) (applying the "rational basis" test to a school board's disparate treatment of two teachers' unions).

4. From its inception until 1969, the AEA represented only whites. A black teachers' organization formed in the 1890's and merged, by court order, with the AEA in 1969.

5. Ala. Code § 16–25–19(b)(4) (1975).

6. Ala. Code § 16–24–30 (1975).

7. Ala. Code § 16–24–31 (1975).

by tenured teachers who have been dismissed from employment by local boards of education. The Board of Control of the Teachers' Retirement System provides retirement allowances and other benefits to Alabama public school teachers.[8] Appellants also challenge the Alabama statutory provision which permits non-teacher AEA staff, but not ASFT staff, to participate in the State Teachers' Retirement System.[9]

## II. *Equal Protection*

The court below held that appellants had "failed to meet their burden of demonstrating that the statutes in question bore no rational relationship to any legitimate state interest"[10] and had therefore failed to overcome the presumption that state statutes are constitutional. The appellants argue that this holding was erroneous for two reasons. First, ASFT asserts that Alabama failed to meet its burden of coming forward and articulating through a competent witness[11] its legitimate interests in the statutory scheme. Second, ASFT argues that no rational basis exists to support the statutory discrimination between the AEA and ASFT.

■ We believe appellants' first contention misstates the burden of proof requirements in a "rational basis" equal protection challenge. Supreme Court precedent holds that state statutes are presumed constitutional even in the absence of any express legislative purpose. "Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and statutory classifications will be set aside only if no grounds can be conceived to justify them." *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969). The burden is therefore on the party challenging the statute to "negative every conceivable basis which might support it." *Madden v. Kentucky*, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). *See New Orleans v. Dukes*, 427 U.S. 297 (1976); *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973).

■ We therefore address appellants' second argument that the statutory classification lacked any rational basis. Although the traditional two-tier equal protection analysis recently has been somewhat unsettled,[12] we believe that the "rational basis" test is still accurately summarized by the Supreme Court's language in *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). There the Court stated:

Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if

---

**8.** Both the Commission and Board of Control are state agencies. The Commission was created in 1959; the Board in 1940.

**9.** Ala. Code § 16–25–3 provides, inter alia: "[T]he membership of the retirement system shall consist of the following: All persons who shall become teachers after the date of establishment shall become members of the retirement system as a condition of their employment." Section 16–25–1(3) defines "teacher" to include: "Any teacher ... administrative officer or clerk employed in any public school ... or any similar employee or officer of the department of education or of the Alabama education association...."

**10.** The court reached this conclusion after determining that the rational basis standard rather than strict scrutiny was proper. *See* note 3 *supra.*

**11.** By "competent witness" we assume appellants mean someone who had either participated in the enactment of the challenged statutes or had special knowledge of the legislature's motivation for passing the statutes.

**12.** Recent commentary has indicated that, in light of cases striking, on equal protection grounds, laws classifying on the basis of illegitimacy or gender, the Supreme Court may be evolving a new "middle tier" of equal protection review. *See, e. g.,* G. Gunther, *Cases and Materials on Constitutional Law* 672–75 (10th ed. 1980); N. Nowak, R. Rotunda, & J. Young, *Handbook on Constitutional Law* 525–27 (1978); L. Tribe, *American Constitutional Law* 1082–92 (1978).

the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *Id.* at 425–26, 81 S.Ct. at 1104–05. *See New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976); *American Real Estate Institute, Inc. v. Alabama Real Estate Commission,* 605 F.2d 931, 933–34 (5th Cir. 1979).

In its brief the state offered several suggested bases for validating the statutes at issue, chiefly relying on the comparative size of the AEA to ASFT, and the position of the AEA as a long-standing body representing all educational interests. We deem the AEA's comparative size—it represents 92% of Alabama's public school teachers—a rational basis for the state's grants of power to AEA officers to be ex officio members of the Tenure Commission and the Board of Control of the Alabama Teachers' Retirement System and to designate teachers to the Tenure Commission. A limited number of seats constitute, and are feasible on, each of these bodies. The state acts rationally in allotting such seats to the AEA as the organization which represents the overwhelming proportion of Alabama's teachers. Moreover, because the AEA represents school principals and other teacher-supervisors excluded from the ASFT, the Alabama legislature may have reasoned that the AEA was the proper body to have representatives on committees whose decisions would affect all teaching personnel, rather than only classroom teachers.

Similarly, the statutory exclusion of ASFT non-teacher staff from participating in the retirement program, despite inclusion of similar AEA staff, rationally relates to the state interest in providing a stable retirement system for teachers and other personnel with the least administrative cost and burden. The legislature rationally could have concluded that the long-standing position of the AEA as the major representative of educational personnel, as well as the AEA's significant contributions to the initial planning of the retirement system,[13] warranted the additional administrative expense of including non-teacher staff of the AEA in the retirement program, while refusing to assume that administrative burden for the staff of other school-related organizations which had yet to demonstrate the longevity and dedication of the AEA.[14] *See City of Charlotte v. Local 660, International Association of Firefighters,* 426 U.S. 283, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976) (holding that the failure of the city to withhold union dues from employees' paychecks despite withholding for a variety of other purposes was a reasonable way for the city to avoid the administrative burden of providing withholding for any group requesting it); *Arkansas State Highway Employees Local 1315 v. Kell,* 628 F.2d 1099 (8th Cir. 1980) (following *Charlotte* under similar facts).

In short, while the Alabama legislature might have adopted a more objective scheme for determining retirement participation,

> the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines; in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

---

**13.** Uncontroverted testimony by the defense witness Dr. Paul R. Hubbert indicated that the AEA employed and paid the actuary who set up the retirement system and drafted the enabling legislation for the system.

**14.** The record discloses that the non-teacher staff of at least two other associations, the Alabama High School Athletic Association and the Alabama School Board Association, are now permitted, by statutory amendment, to participate in the retirement system. In absence of any evidence to the contrary, we assume that these same factors of longevity and proven dedication to improving the educational environment may have influenced these legislative additions.

*New Orleans v. Dukes*, 427 U.S. 297, 303–304, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). Because we cannot say that the line drawn by the Alabama legislature is "wholly arbitrary," we conclude that the statute survives the "rational basis" test.

### III. *Freedom of Association*

■ Appellants also contend that Alabama's statutory preferences in favor of the AEA infringe appellants' first amendment right of freedom of association without compelling state interest.

> The first amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievances. And it protects the right of associations to engage in advocacy on behalf of their members. The government is prohibited from infringing upon these guarantees either by a general prohibition against certain forms of advocacy or by imposing sanctions for the expression of particular views it opposes.

*Smith v. Arkansas State Highway Employees Local 1315*, 441 U.S. 463, 464, 99 S.Ct. 1826, 1827, 60 L.Ed.2d 360 (1979) (citations omitted). Appellants are thus protected individually in their right to associate and as an organization engaging in advocacy. The questions before us therefore are whether Alabama's statutory preferences in favor of the AEA are "sanctions for the expression of . . . views [Alabama] opposes," *Arkansas State Highway Employees, supra*; whether they indirectly abridge the right of ASFT's rank and file members to associate by discouraging members from joining the ASFT, *see N.A.A.C.P. v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); and whether, if either of the above are true, Alabama has a compelling state interest justifying such infringements. *Id.* at 463, 78 S.Ct. at 1172.

As a matter of historical fact, Alabama's statutory preferences favoring the AEA were not sanctions imposed against the ASFT. The challenged provisions were enacted in 1939 and 1951, some twenty years before the ASFT began to operate in Alabama. While the legislature could have amended the laws in the interim [15] no evidence suggests that the lack of amendment was due to any fact other than the AEA's position as the dominant teacher representative in the state.

The question whether Alabama's statutory preferences unconstitutionally discourages membership in the ASFT is somewhat more difficult. The fact that members of the AEA, but not the ASFT, sit on the State Tenure Commission and on the Board of Control of the retirement system could conceivably affect an individual teacher's choice of representational organization. The record in this case, however, is devoid of any evidence that the statutes in fact placed any burden on the associational activities of the ASFT.[16] On the contrary, the record discloses that teachers could freely join both organizations, and that individual teachers were not required to disclose ASFT membership to AEA officials. Hence, this case differs from *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), in which the adverse effect of *forced* disclosure on associational rights was supported by "an uncontroverted showing that on past occasions revelation of the identity of its rank and file members has exposed those members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Id.* at 462, 78 S.Ct. at 1171. *See Buckley v. Valeo*, 424 U.S. 1, 71–72, 96 S.Ct. 612, 659–660, 46 L.Ed.2d 659

---

**15.** The record contains evidence that in fact ASFT introduced an amending bill which was rejected by the Alabama legislature.

**16.** The only evidence in the record which bears on possible associational burdens for ASFT was testimony by appellants' only witness, Mr. Phillip Sharpe, that school principals and administrators had apparently pressured teachers

not to join the ASFT. Mr. Sharpe testified, for example, that the Birmingham Board of Education had a local rule prohibiting teachers from dropping AEA membership during the year. While such evidence might be probative in a § 1983 suit against the school officials, it is not relevant to the constitutionality of the state statutes at issue here.

(1976) (holding that minor parties, who challenged campaign contribution disclosure statutes as burdening their associational rights, must introduce some evidence of an actual burden to gain exemption from disclosure laws).[17]

We find the Supreme Court's decision in *Smith v. Arkansas State Highway Employees Local 1315*, 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979) instructive on the first amendment issue. In that case the State Highway Employee's local union and individual union members challenged the Arkansas State Highway Commission's refusal to consider employee grievances when filed by the union rather than by the individual employee. The Supreme Court concluded that such refusal violated neither the union's nor the individual members' first amendment rights. The Court specifically noted that the plaintiff did not claim "that the Highway Commission has prohibited its employees from joining together in a union, or from persuading others to do so, or from advocating any particular ideas. . . . [T]his type of 'impairment' is not one that the Constitution prohibits." *Id.* at 465–66, 78 S.Ct. at 1173.

Similarly, here no evidence was introduced to indicate Alabama prohibited eligible individuals from joining the ASFT or from persuading others to do so; nor did the state prohibit or discourage the ASFT from advocating any particular idea. In this case, appellants failed to show that the statutes involved placed any burden whatsoever on associational interests.

AFFIRMED.

---

**17.** We recognize that the *Buckley* court found the state interests in campaign disclosure laws met the traditional "compelling interest" test normally used to review fist amendment claims. *Buckley*, 424 U.S. at 64–68, 96 S.Ct. at 656–658. *Buckley*, however, like *Alabama* before it, dealt with forced disclosure which created a "significant encroachment" on first amendment rights, hence invoking the "compelling interest" test. *Id.* at 464–65, 78 S.Ct. at 1172–73. Because we conclude that appellants failed to demonstrate any first amendment burden in this case, we do not reach the issue whether the statutes implement a "compelling state interest."