**Joseph E. ALLEN, Plaintiff,**

**v.**

**The CONSOLIDATED CITY OF JACKSONVILLE, FLORIDA, Defendant.**

No. 89–421–Civ–J–12.

United States District Court, M.D. Florida, Jacksonville Division.

June 2, 1989.

William J. Sheppard, Jacksonville, Fla., for plaintiff.

James L. Harrison, Gen. Counsel, Steven E. Rohan and Stephen Michael Durden, Asst. Counsel, Office of Gen. Counsel, Jacksonville, Fla., for defendant.

ORDER DISMISSING PLAINTIFF'S VERIFIED COMPLAINT FOR LACK OF STANDING AND, ALTERNATIVELY, FINDING NO BASIS FOR GRANTING THE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

MELTON, District Judge.

This cause came on to be heard on the Motion for Temporary Restraining Order and Preliminary Injunction, filed herein on May 17, 1989, by plaintiff Joseph E. Allen ("Allen"). Defendant, The Consolidated City of Jacksonville, Florida ("City"), filed a response in opposition to said motion on May 23, 1989. On May 25, 1989, the parties presented oral argument to the Court on plaintiff's motion. In their memoranda of law and during oral argument, the parties addressed plaintiff's standing in this case. For the reasons stated below, the Court will dismiss this cause because plaintiff lacks standing.

*Factual Background*

Plaintiff is a resident of the City of Jacksonville, an ordained minister, a theologian, and father of a child who attends a public elementary school in the City. Plaintiff seeks to have the enforcement of Jacksonville Municipal Resolution 89–454 ("resolution") enjoined because it allegedly violates the establishment clause of the first and fourteenth amendments. The resolution, which is attached as Exhibit "A" to plaintiff's Verified Complaint for Declaratory and Injunctive Relief and for Money Damages, filed herein on May 17, 1989, was adopted by the City Council on May 9, 1989, and approved by Mayor Thomas L. Hazouri on May 17, 1989. Section 1 of the resolution states the following:

> The Council urges and requests that there be a day of non-denominational voluntary prayer, meditation, personal commitment or other appropriate solemn dedication from all segments of the community in Duval County as an indication of community wide dedication in its fight to stop the sale and use of drugs, particularly crack cocaine, and its resulting incidents of crime.

Section 2 of the resolution authorizes the Council President "to designate a Chairperson and six members as a committee to encourage and coordinate participation by all segments and denominations in the community...." "In its efforts to encourage and coordinate participation" by individuals throughout the City, the committee is authorized in section 2 to consider "(a) all churches, synagogues and other religious organizations; (b) all public and private schools, colleges and universities; (c) all private businesses and local government offices and their respective employees;" and (d) the media.

The committee chairman, Mr. Charles D. Towers, Jr., was appointed May 1, 1989, and the committee members were appointed between May 9 and May 17, 1989. The committee has established June 30, 1989, as the date of the "day of non-denominational voluntary prayer, meditation, personal commitment or other appropriate solemn dedication ... in [the City's] fight against drugs" (hereinafter "anti-drug day").[1]

---

1. Although plaintiff consistently refers to the anti-drug day as "an official day of prayer," the resolution refers to the day as a community-wide event to fight the sale and use of drugs.

Based on the record and argument of counsel, the Court finds that the passage of the resolution and the designation of the committee are the City's only involvement in the community anti-drug day. There is no evidence that City funds have been, are being, or will be expended to promote the anti-drug day. There is also no evidence that City officials will play an active role, or *any* role, in the anti-drug day.

The resolution is broad, general and does not identify how the anti-drug day will be planned or executed: details are left up to the committee. The stated purpose of the resolution is to encourage the entire community to devote the established anti-drug day to ridding the community of illegal drugs. The record is silent as to any specific events planned. There is no evidence of any plans to have group prayer in any school or other public forum, by any public official, or otherwise. The record does not indicate that plaintiff or his child or any group of individuals will be directly affected by the possible "prayer" aspects, if any, of the anti-drug day. Although the entire community is urged to participate in the anti-drug day, the resolution, on its face, does not purport to coerce anyone to pray or subject any individual or group to prayer. The resolution urges "prayer," but also urges with equal force "meditation, personal commitment or other appropriate solemn dedication."

*Issues*

In deciding the instant motion, the Court will address the following issues: statutory construction, standing and the merits of plaintiff's motion for preliminary injunction. Each issue will be discussed in turn below.

*Statutory Construction*

■ As a preliminary matter, applying the law of constitutional statutory construction, the Court finds that the resolution is not invalid on its face. A legislative enactment is presumed to be constitutional. *Alabama State Federation of Teachers, AFL–CIO v. James*, 656 F.2d 193, 195 (5th Cir. Unit B 1981); *see New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988).

"[S]tatutes should be construed to avoid constitutional questions." *United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979). "When one admissible construction will preserve a statute from unconstitutionality and another will condemn it, the former is favored even if language, ... and arguably the legislative history point somewhat more strongly in another way." *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 134, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974).

In the instant case, the City has enacted a resolution which among other things, "urges and requests that there be a day of non-denominational voluntary prayer." The entire community, including religious institutions, schools, government offices and the media are urged to participate. The Court finds that there are at least three reasonable interpretations of the City's resolution which do not involve constitutional questions. First, the resolution may be interpreted as not involving religious prayers at all. Webster's Third New International Dictionary (1966) defines "prayer" as either "a solemn and humble approach to Divinity in word or thought" or an "earnest request." *Id.* at 1782. The phrase "non-denominational" is defined as not being restricted to or associated with a religious denomination. *Id.* at 1536. In addition to "non-denominational voluntary prayer," the resolution also urges "meditation, personal commitment or other appropriate solemn dedication." When read in context, the City's resolution establishes an event different from a mere "official day of prayer." A reasonable interpretation of the resolution might be that the City is urging the Jacksonville community to "earnestly request", in each individual's own way, an end to the sale and use of drugs, without urging that anyone conduct religious prayer.

A second interpretation of the resolution which avoids constitutional difficulty is that the City is not contemplating any specific religious prayer activity. The resolution on its face could be fairly construed to mean that (1) citizens of faith are urged to use their prayers to help fight the drug

epidemic; and (2) both citizens who are and are not of faith are urged to meditate, make personal commitments, and make other solemn dedications to help fight the sale and use of drugs. The resolution, so interpreted, contains no value judgments concerning religion; there is no governmental advancement, endorsement, or discrimination of any specific religion, of religion in general or of the absence of religious beliefs.

A third interpretation is that even if the committee contemplated one or more specific religious prayer activities, the resolution does not indicate that such activities would be at any location or performed in any manner that would not be constitutionally permissible or appropriate. For example, the committee might request that churches, synagogues, other religious organizations, and religious affiliated private schools consider anti-drug day prayers at their respective religious institutions. Likewise, the committee might encourage and coordinate personal commitments and other appropriate solemn dedications in other segments of the community. Construing the resolution on its face, the Court finds that, based on the wide range of activities urged by the City in the resolution and the absence of any evidence of any specific unconstitutional conduct, plaintiff has not demonstrated that the language of the resolution requires a potentially unconstitutional interpretation.

*Standing*

Regarding the issue of standing, plaintiff has claimed taxpayer standing and actual injury standing. According to the Supreme Court, "the term 'standing' subsumes a blend of constitutional requirements and prudential considerations...." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citing *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). Article III requires some actual or threatened injury personally suffered by plaintiff that can be traced to the challenged action and is likely to be redressed by a favorable decision.

*Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758; *Bell v. Little Axe Indep. School Dist. No. 70*, 766 F.2d 1391, 1398 (10th Cir.1985). Among the prudential principles are the following: (1) plaintiff generally must assert personal legal rights; (2) the Court must refrain from adjudicating "generalized grievances" that would be more appropriately addressed by one of the other branches of government; and (3) the complaint must fall within the zone of interests to be protected by the particular constitutional guarantee invoked. *Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. at 759–60; *Bell*, 766 F.2d at 1398. "The federal courts have abjured appeals to their authority which would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Valley Forge*, 454 U.S. at 473, 102 S.Ct. at 759 (quoting *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973)).

Courts have found that taxpayer standing is available to attack the misuse of municipal monies, *Massachusetts v. Mellon*, 262 U.S. 447, 486, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923) (citing *Crampton v. Zabriskie*, 101 U.S. 601, 609, 25 L.Ed. 1070 (1880)), and the misuse of municipal property, *see Bell*, 766 F.2d at 1398. In this cause, however, there is no allegation of use or misuse of municipal money or property. Although plaintiff stated at oral argument that City officials' time is money and that they spent some undetermined amount of time passing, signing and publicizing the resolution, there is no other evidence of any past, present or future expenditure of City money or use of City property relating to the resolution.

The law is clear that taxpayers may "invoke the interposition of a court of equity to prevent an illegal disposition of the moneys [sic] of the county [or City]." *Crampton*, 101 U.S. at 609. However, plaintiff has cited no authority to support a suit by a taxpayer based on "taxpayer standing" where there is no illegal expenditure of taxpayer funds or illegal use of public property. *See Valley Forge*, 454 U.S. at 479–480, 102 S.Ct. at 762–763 (no taxpayer

standing due to failure to allege specific injury from taxing and spending power). The record and arguments do not indicate that any City funds were used, are being used, or will be used to promote the resolution. Because plaintiff has failed to show evidence of the misuse of municipal monies or property, he has failed to demonstrate taxpayer standing.

Similarly, there is no specific evidence or allegation of activity that will affect the school system so as to warrant school child standing. *See Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). The resolution indicates that the committee should consider all public schools in its efforts to encourage and coordinate participation in the community-wide event, but the resolution does not indicate whether anyone in public school will actually be exposed to "non-denominational voluntary prayer, meditation, personal commitment" or any form of "solemn dedication." The risk of public school students' exposure to any of the anti-drug day events on June 30, 1989, would be negligible since school will be out for the summer. Although some public schools in the City have a summer session, there is no evidence that plaintiff's son, an elementary school student, will actually be in school on June 30, 1989. Plaintiff has alleged that his child is in a public elementary school in the City, but he has not alleged that his child, that elementary school, or any specific public school in the City will be exposed to any "non-denominational voluntary prayer" or any other anti-drug day activities.

The Court finds that the cases cited by plaintiff in support of his standing are distinguishable.[2] Plaintiff has not shown that he or his family will sustain an actual injury from the resolution. There are no allegations of specific prayers, prayer at any specific locations, City involvement in prayer or in prohibiting prayer, or any other actions by the City which might expose anyone to prayer or religion. Plaintiff is merely speculating that unlawful school activities or unlawful government actions will occur during or prior to the anti-drug day. In view of the broad, general nature of the resolution, the lack of evidence as to any specific activities contemplated by the committee, and the range of community participation "urged" by the City Council, the Court is of the opinion that plaintiff has not demonstrated an actual or threatened injury and, therefore, does not have standing. *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758. *Accord, Alabama v. U.S. EPA*, 871 F.2d 1548 (11th Cir.1989). Even if the instant case were the plaintiff's only chance to challenge the City's resolution, "[t]he assumption that if [plaintiff has] no standing to sue, no one would have standing, is not a reason to find standing." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974).

Since plaintiff has failed to demonstrate that he has standing to pursue this cause of action, this Court lacks subject matter jurisdiction over this cause and plaintiff's verified complaint must, therefore, be dismissed. In view of the fact that the anti-drug day will take place in less than a month from the entry of this Order, how-

---

**2.** *Bowen v. Kendrick*, 487 U.S. ——, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988) (federal grants for services and research in area of premarital adolescent sexual relations and pregnancy); *Edwards v. Aguillard*, 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (state statute requiring teaching of creation science); *Grand Rapids School District v. Ball*, 473 U.S. 373, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985) (state funding of religious studies); *Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985), *aff'g* 705 F.2d 1526 (11th Cir.1983) (moment of silence for meditation or voluntary prayer in public school); *Abington School District v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (Bible readings in public school);

*Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (recitation of specific prayer in public school); *Jager v. Douglas County School District*, 862 F.2d 824 (11th Cir.1989) (invocation at public school football game); *Saladin v. City of Milledgeville*, 812 F.2d 687 (11th Cir.1987) (City stationery embossed with the word "Christianity"); *ACLU v. Rabun County Chamber of Commerce*, 678 F.2d 1379 (11th Cir.1982) (large lighted cross on state park property); *Karen B. v. Treen*, 653 F.2d 897 (5th Cir., Unit A, Aug.1981) (prayer in public school); *Bell, supra*, 766 F.2d 1391 (religious meetings and distribution of Bibles at public school during school hours).

ever, the Court will rule in the alternative on the merits of plaintiff's request for a preliminary injunction so that plaintiff may receive complete review from an appellate court, if he so chooses.

*Preliminary Injunction*

■ If plaintiff were able to demonstrate standing to bring this cause of action, the request for a preliminary injunction would have to be denied for failure to satisfy the traditional four-part test. Plaintiff must prove each of the following in order to be entitled to a preliminary injunction: (1) that plaintiff is substantially likely to prevail on the merits; (2) that there is a substantial threat that plaintiff will suffer irreparable injury if immediate injunctive relief is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the City; and (4) that immediate injunctive relief is demonstrably in the public interest. *Johnson v. U.S. Dept. of Agriculture,* 734 F.2d 774, 781 (11th Cir.1984); *Canal Auth. v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974). Courts have held that the granting of a preliminary injunction is a drastic remedy which should be issued only when a plaintiff's injuries cannot be properly redressed after a full hearing on the merits of the case. *Id.* Each of these four issues will be addressed in turn below.

*Prevailing on the Merits*

Regarding the alleged violation of the establishment clause, the parties agree that the analysis of this case is governed by the three-part test announced in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). The *Lemon* test holds that, to be upheld against a claim of violation of the establishment clause, state action: (1) must have a secular legislative purpose; (2) must not have a principal or primary effect that advances or inhibits religion; and (3) must not foster an excessive government entanglement with religion. Noting that the tests "are no more than helpful signposts," *Hunt v. McNair,* 413 U.S. 734, 741, 93 S.Ct. 2868, 2873, 37 L.Ed.2d 923 (1973), the Court considers the

resolution in terms of the purpose, effect and entanglement prongs.

According to the "whereas" clause of the resolution, the purpose of the resolution is to stop "the increased sale and use of drugs, particularly crack cocaine." Allen has provided no evidence, either through the verification of his complaint or through affidavit, to suggest that there is any other purpose. While the resolution urges a day of "non-denominational voluntary prayer, meditation, personal commitment or other appropriate solemn dedication," there is no inference that the purpose of this is anything but secular in nature, to wit, the war against drugs. Even though a statute is motivated in part by a religious purpose, it may still satisfy the first criterion. *Wallace v. Jaffree,* 472 U.S. 38, 56, 105 S.Ct. 2479, 2489, 86 L.Ed.2d 29 (1985). The first amendment requires that a statute must be invalidated if it is entirely motivated by a purpose to advance religion, and that in applying the purpose test, it is appropriate to ask whether government's actual purpose is to endorse or disapprove of religion. *Edwards v. Aguillard,* 482 U.S. 578, 107 S.Ct. 2573, 2578, 96 L.Ed.2d 510 (1987) (quoting *Lynch v. Donnelly,* 465 U.S. 668, 690, 104 S.Ct. 1355, 1368, 79 L.Ed.2d 604 (1984) (O'Conner, J. concurring)). In this case, "prayer" is but one of four methods urged to fight drugs.

The Court finds that *Jager v. Douglas County School District,* 862 F.2d 824 (11th Cir.1989) (invocation at public school football games), *cert. denied,* — U.S. —, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989), and the prayer in public school cases cited by plaintiff are distinguishable.[3] Unlike the public school prayer cases, in the instant case there is no evidence of a specific prayer, a specific public forum or other location where "prayer" will take place, or even that "prayer" as opposed to some "other appropriate solemn dedication" to fight drug use will be advocated.

As opposed to the non-secular purpose in *Jager,* in the instant case, the resolution clearly identifies the secular purpose as

---

**3.** *See* note 2, *supra.*

stopping drugs and crack cocaine. The choice of a religious observance is totally voluntary, non-coercive, and incidental. In *Jager,* the practice called for prayer only, and those attending the games were put in a position of participating in group prayer. These dangers are not present in the instant case.

The "purpose" prong of the *Lemon* test is violated when the government endorses religion. *Lynch,* 465 U.S. at 690, 104 S.Ct. at 1368. The City's resolution urges a day of: (1) non-denominational voluntary prayer, (2) meditation, (3) personal commitment, or (4) other appropriate solemn dedication. Allen has failed in his burden to establish the likelihood that the above provision will be interpreted as an endorsement of religion in general or endorsement of a particular religion. The non-denominational voluntary prayer alternative is only one alternative urged upon the citizenry. The other three alternatives have nothing to do with any kind of religion. The common thread establishing the purpose is the secular goal of stopping the sale and use of drugs.

Plaintiff argues that the resolution has a primary effect of "advancing" religion, by urging "prayer"; however he does not address the meditation, personal commitment, and solemn dedication components of the resolution. Allen's approach suggests the polarized view that *any* governmental reference to God or prayer has the effect of advancing religion. This view has been rejected by the Supreme Court. *Lynch,* 465 U.S. at 683, 104 S.Ct. at 1364; *Zorach v. Clauson,* 343 U.S. 306, 312, 72 S.Ct. 679, 683, 96 L.Ed. 954 (1952). Such a view might necessitate the abolition of the National Day of Prayer, 36 U.S.C. § 169(h), the elimination of "under God" from our pledge of allegiance, the removal of "in God we trust" from our currency and the removal of many other references and calls to "God" and "prayer" in our state and national affairs.

The purpose of the establishment and free exercise clauses of the first amendment is "to prevent, as far as possible, the intrusion of either [the church or the state] into the precincts of the other.... Total

separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable." *Lemon,* 403 U.S. at 614, 91 S.Ct. at 2112. Not every law that confers an indirect, remote, or incidental benefit upon religious institutions is constitutionally invalid for that reason alone. *Lynch, supra,* 465 U.S. at 683, 104 S.Ct. at 1364. The resolution in this case is neutral: it does not mandate or prefer religious activity. The inclusion of prayer as alternative conduct is neither coercive or endorsing. Based on the foregoing, the Court finds that plaintiff has failed to demonstrate that the resolution has the effect of advancing religion.

Plaintiff suggests that the resolution evidences excessive government entanglement with religion, but the record fails to support such an argument. Plaintiff fails to show how the resolution excessively entangles the City in religious practice. As discussed above, the Court finds that the resolution does no more than (a) urge and request a day for the alternative enumerated activities and (b) authorizes the designation of a committee to encourage and coordinate activities. There is no suggestion of taxpayer expenditures or mandatory participation. The "encouraged" community-wide event is only to take one day. Allen makes no argument of excessive entanglement and none appears to exist. Based on the record and arguments, the Court finds that the resolution does not involve excessive entanglement.

Since Allen has failed to demonstrate a likelihood of success on any of the *Lemon* establishment standards, he has failed to demonstrate likely success on the merits under that test. The Court reaches the same conclusion based upon an analysis of plaintiff's claims under an alternative analysis presented in *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). Under the *Marsh* method, historical circumstances contemporaneous with the passage of the establishment clause by the First Congress may insulate a practice from attack under that clause. *See id.* at 786–95, 103 S.Ct. at 3333–38.

The *Marsh* Court approved the practice of paying a chaplain to open sessions of a state legislative body with prayer, basing its approval of the challenged practice on the decision in the First Congress to pay a chaplain to open the sessions, the practice thereafter, and the support of the first amendment's framers and ratifying states. The parallels to this case are so close that *Marsh* mentions a resolution by the House of Representatives, passed the same day on which the Bill of Rights was approved, requesting the President set aside a day of Thanksgiving and prayer. *See id.* at 788 n. 9, 103 S.Ct. at 3334 n. 9; *see also* L. Levy, *The Establishment Clause* 172 (1986). The continuity over time with which the Congress has requested and the President has issued proclamations designating days of prayer or personal commitment, on general and specific topics, can be seen as a continuing endorsement of the contemporaneous construction placed on the establishment clause by the First Congress. Moreover, James Madison, a drafter of the establishment clause whose views on religion are given considerable weight, *see Marsh*, 463 U.S. at 788 n. 8, 103 S.Ct. at 3334 n. 8, issued day of prayer proclamations during his terms as President. *See* Drakeman, *Religion and the Republic: Madison and the First Amendment,* in James Madison on Religious Liberty 240–41 (R. Allen ed. 1985).

Given the fashion in which this practice "is deeply embedded in the history and tradition of this country," *Marsh*, 463 U.S. at 786, 103 S.Ct. at 3333, characterization of the contested resolution as a day of prayer proclamation would not make out an establishment clause violation in the light of *Marsh*. For the foregoing reasons, plaintiff's request for a preliminary injunction must be denied for failure to demonstrate his likely success on the merits.

*Irreparable Injury*

Regarding the irreparable injury requirement of a preliminary injunction, the only reference to injury or damages in the complaint are found in Paragraph 8, "Allen ... suffers injury", and in paragraph D of the Prayer for Relief. Plaintiff does not make any specific allegations of irreparable harm or injury in the complaint and none can be presumed. The only reference to injury in Allen's Memorandum of Law is "ongoing official preparation" as well as "passage of a facially invalid resolution." Neither passage or preparation, however, are shown to work an establishment of religion detrimental to Allen, nor are they shown to inhibit him in the free exercise of his religion, nor are other constitutional rights implicated.

There is nothing in the record to suggest that Allen's "injuries" are irreparable. Allen has not been, and cannot be injured by the resolution. Neither Allen nor his family are subjected to mandatory conditions or coercion of any kind. The resolution is merely a request to citizens. It is not an ordinance and does not have the force or effect of law. There is no penalization in any form. Because there is no evidence of an irreparable injury, there is no legal basis for the preliminary injunction.

*Balancing Test for Harm and Public Interest*

The third step in the test for the granting of a preliminary injunction is whether the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the City. The resolution on its face, and the lack of evidence as to the resolution's application, indicate that Allen will most likely not be harmed by the anti-drug day. Although enjoining the City's preparation for the June 30th event may not adversely affect the City's war on drugs, the Court finds that the harm to the City of a preliminary injunction would be greater than the purported harm to the plaintiff if implementation of the resolution were not enjoined.

The final test of a preliminary injunction analysis is whether the granting of the injunctive relief would be in the public interest. Based on the discussion, *supra*, the Court finds that the public interest would best be served by not granting the preliminary injunction in this case. The absence of any evidence of potential injury from the range of actions urged is outweighed by the hope that the anti-drug day may have at least a minimal, temporal effect in the

war on drugs in the Jacksonville community.

For the foregoing reasons, the Court finds that plaintiff has failed to prove any of the elements of the four-part test for granting a preliminary injunction. Accordingly, if plaintiff had standing, the request for a preliminary injunction would be denied.

Upon consideration of the motion, memoranda, entire file, arguments of counsel and relevant law, it is ADJUDGED:

That this cause is hereby dismissed with prejudice for lack of subject matter jurisdiction.

DONE AND ORDERED.