**Brian Gillespie BOWN, Plaintiff,**

v.

**GWINNETT COUNTY SCHOOL DISTRICT; George G. Thompson, in his official capacity as Superintendent and in his individual capacity; Zell Miller, in his official capacity as Governor of the State of Georgia; and Michael Bowers, in his official capacity as Attorney General of the State of Georgia, Defendants.**

**Civ. A. No. 1:94–CV–2224–FMH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 31, 1995.

Bruce S. Harvey, W. Sander Callahan, Steven Keith Leibel, David C. Ates, Atlanta, GA, for plaintiff.

E.L. Victoria Sweeny, Paul Eric Andrew, Jorgia C. Northrup, Lawrenceville, GA, Phillip L. Hartley, Martha M. Pearson, Gainesville, GA, for defendants.

## ORDER

HULL, District Judge.

This matter is before the Court on Plaintiff's challenge to the constitutionality of Georgia's Moment of Quiet Reflection in Schools Act ("the Act"), Act No. 770, 1994 Ga.Laws 256 (1994) (codified at O.C.G.A. § 20-2-1050 (Supp.1995)). Plaintiff Brian Gillespie Bown ("Bown"), a school teacher at South Gwinnett High School, filed this declaratory judgment action seeking a declaration that the Act is unconstitutional in its entirety and requesting the Court to enjoin its enforcement.

At the beginning of the school day on August 22, 1994, the Principal of South Gwinnett High School announced over the intercom: "As we begin another school day, let us take a few moments to reflect quietly on our day, our activities and what we hope to accomplish." Plaintiff's deposition ("Plaintiff's dep.") at 239; Exhibit C to Plaintiff's Brief. At the conclusion of the announcement, Plaintiff Bown advised his class: "You may do as you wish. That's your option. But I am going to continue with my lesson." Plaintiff's dep. at 239. Plaintiff Bown continued to talk through the moment of silence.

The Principal gave Plaintiff Bown overnight to reconsider his position and to advise if he could be silent during the moment of silence. The next day on August 23, 1994, Plaintiff Bown told the Principal "the answer is no," and left the school. Plaintiff's dep. at 284. Later that day, Plaintiff Bown was suspended with pay.

The next day on August 24, 1994, Plaintiff Bown filed a Complaint in this Court, claiming that he was terminated from employment without procedural due process. Plaintiff Bown requested reinstatement to his position as a teacher in the Gwinnett County School System, and sought relief from compliance

with Georgia's Moment of Quiet Reflection in Schools Act. After a hearing on August 26, 1994, this Court denied preliminary injunctive relief and Plaintiff's request for reinstatement, finding that Plaintiff had not been terminated, but given only notice of a termination hearing in September, 1994, and that Plaintiff had failed to demonstrate a substantial likelihood of success on the merits of his claim. *See* Aug. 26, 1994 Order [5–1]. Subsequently, Plaintiff filed an Amended Complaint and a Second Amended Complaint adding claims for declaratory and injunctive relief and specifically requesting this Court to declare the Act unconstitutional and to enjoin its enforcement.

All parties expedited discovery regarding the constitutionality of the Act and filed various depositions, affidavits, transcripts, and briefs. Plaintiff Bown requested the Court to declare the Act unconstitutional and enjoin its enforcement. The American Civil Liberties Union filed an amicus brief in support of Plaintiff's request.

In addition, Defendants Zell Miller, in his official capacity as Governor of the State of Georgia, and Michael Bowers, in his official capacity as Attorney General (the "State Defendants"), filed a Motion to Dismiss or, in the alternative, a Motion for Summary Judgment contending that the Act is constitutional and that the Governor and Attorney General should be dismissed from this action. Defendants Gwinnett County School District and Superintendent Thompson also filed a brief asserting that the Act is constitutional.

On February 27, 1995, this Court held a final evidentiary hearing on the issue of the constitutionality of the Act. All parties stipulate that the record is complete as to the constitutional issue and that the Court may

issue final judgment on Plaintiff Bown's request for declaratory and injunctive relief regarding the constitutionality of the Act.[1]

## I. FINDINGS OF FACT

### A. Legislative History of Georgia's Moment of Quiet Reflection in Schools Act in 1994

The 1994 Georgia General Assembly passed the Moment of Quiet Reflection in Schools Act. O.C.G.A. § 20–2–1050 (Supp. 1995). The Act provides for a brief period of quiet reflection for not more than 60 seconds at the beginning of every school day. This 1994 Act repealed the prior statute,[2] enacted in 1969. The 1994 Act, as codified, provides as follows:

(a) In each public school classroom, the teacher in charge shall, at the opening of school upon every school day, conduct a brief period of quiet reflection for not more than 60 seconds with the participation of all the pupils therein assembled.

(b) The moment of quiet reflection authorized by subsection (a) of this Code section is not intended to be and shall not be conducted as a religious service or exercise but shall be considered as an opportunity for a moment of silent reflection on the anticipated activities of the day.

(c) The provisions of subsections (a) and (b) of this Code section shall not prevent student initiated voluntary school prayers at schools or school related events which are nonsectarian and nonproselytizing in nature.

O.C.G.A. § 20–2–1050 (Supp.1995).

The preamble in Section 1 of the 1994 Act explains a secular purpose for the Act, as follows:

(b) The silent prayer or meditation authorized by subsection (a) of this Code section is not intended to be and shall not be conducted as a religious service or exercise but shall be considered as an opportunity for silent prayer or meditation on a religious theme by those who are so disposed or a moment of silent reflection on the anticipated activities of the day.

Silent Prayer or Meditation in Public School Classrooms, Act No. 324, 1969 Ga. Laws 488 (1969) (repealed 1994). The 1994 statute provides for only a brief period of quiet reflection on the anticipated activities of the day.

---

1. By agreement of the parties, the issues regarding the termination of Plaintiff's employment are not addressed now. Discovery as to those issues proceeds, and motions or trial on those issues will be entertained at a later date.

2. The 1969 statute provided for "silent prayer or meditation," as follows:
 (a) In each public school classroom, the teacher in charge may or, if so authorized or directed by the board of education by which he is employed, shall, at the opening of school upon every school day, conduct a brief period of silent prayer or meditation with the participation of all the pupils therein assembled.

The General Assembly finds that in today's hectic society, all too few of our citizens are able to experience even a moment of quiet reflection before plunging headlong into the day's activities. Our young citizens are particularly affected by this absence of an opportunity for a moment of quiet reflection. The General Assembly finds that our young, and society as a whole, would be well served if students were afforded a moment of quiet reflection at the beginning of each day in the public schools.

Moment of Quiet Reflection in Schools Act, Act No. 770, § 1, 1994 Ga.Laws 256, 256 (1994). Section 2 of the Act contains subsections (a) and (b), while Section 3 contains subsection (c). *Id.*, §§ 2, 3, 1994 Ga.Laws at 256–57. In addition, the Act contains a severability provision in Section 4, and a standard repealer provision in Section 5. *Id.*, §§ 4, 5, 1994 Ga.Laws at 256–57.

On January 11, 1994, Georgia State Senators David Scott, Walter Ray and Charles Clay introduced the Act as Senate Bill 396. The principal sponsor of the Act, however, was Senator David Scott, a State Senator for twelve years representing an urban district in Atlanta, Georgia. Senator Scott previously had served eight years in the Georgia House of Representatives. At his deposition, Senator Scott testified that he had served as Chairman of the Senate Education Committee, Chairman of the Youth, Aging and Human Ecology Committee, and member of the State Violence Task Force Committee to prevent violence in schools. In those capacities, Senator Scott had observed that after a series of killings on school campuses, students often came together to have a moment of quiet reflection. Senator Scott testified to his belief that if a moment of internal reflection is of value after a death, then it surely would be beneficial at the beginning of each school day, as follows:

This was an effort from an individual out here who sees the dying and the killing everyday with young people. Where guns and violence now are the leading cause of death. Children killing children. And particularly with African–American youngsters now, teenagers, the leading cause of death.

My own feeling is that by having that moment of quiet reflection at the beginning of the day will provide our youngsters with an opportunity to connect with what I say is their inner self, that inner guidance, that compass that is within us all.

Scott deposition ("Scott dep.") at 16.

Senator Scott also testified that the Act was "not an effort to bring prayer back into the schools," but "was one of three bills I introduced to deal with the violence among our young people."[3] Scott dep. at 16–17, 28, 31. Senator Scott had a secular purpose in mind when he introduced the legislation and did not intend for prayer to be reintroduced to public school classrooms during the moment of silence. Instead, Senator Scott envisioned this period of time as a bridge between the school environment and the considerable chaos in the lives of the many students who arrive at school each day unprepared to concentrate in the structured classroom setting. Scott explained his concern about the violent environment with which many students must contend before coming to school. His proposed moment of silence was a part of his overall legislative strategy to combat juvenile violence.

Senator Scott met with legislative counsel and specifically attempted to make sure that his Senate Bill 396 did not bring prayer into the schools but that it provided only a moment of silence and complied with *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), and *Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). Scott dep. at 27–28, 36–37, 42, 68–70. Senator Scott concluded that the purpose of his moment of silence bill was to give the students "a moment of silence of up to 60 seconds at the beginning of each school day for that individual student to use as he or she

---

**3.** In the 1994 session of the General Assembly, Senator Scott also introduced Senate Bill 395 requiring parents to participate in school disciplinary correction programs when their child has chronic disciplinary problems at school and Senate Bill 12 making the sale or transfer of firearms to juveniles a felony.

sees fit, and they are free to do so." *Id.* at 71.

The legislative history reveals that the Act was introduced first as Senate Bill 396. As originally introduced, Senate Bill 396 contained a preamble and subsections (a) and (b) in the same form as they presently appear in the Act. The Senate passed Senate Bill 396 by a vote of 51 to 2. There is *no record of* Senate debate on Senate Bill 396.

When Senate Bill 396 was considered by the House, two amendments were offered and passed. The Johnson amendment in the House extended the period of silence from 60 to 120 seconds. The Davis amendment in the House contains (1) the present subsection (c) in the Act providing that subsections (a) and (b) do not prevent student-initiated voluntary prayer, and (2) a subsection (d) permitting religious clubs to meet during non-school hours. Plaintiff stresses that the Davis amendment was sponsored by 36 legislators whose intent was to return prayer to the schools and that over 120 House legislators voted for the Davis amendment. The Senate failed to pass both House amendments.

Senate Bill 396 went to a Conference Committee with House and Senate members. The Conference Committee deleted the House amendments and reported out the original Senate version of the bill. The Senate adopted the Conference Committee report but the House rejected it by a vote of 75 to 94.

A second Conference Committee was appointed which proposed the original Senate versions of subsections (a) and (b) and the preamble purpose of the bill, together with subsection (c) of the Davis amendment, plus a new section containing a severability provision. This bill passed both the House and Senate.

The Georgia General Assembly does not officially record or transcribe meetings of its committees or debates in either the Georgia Senate or House of Representatives. Nor does it issue formal reports of the work done in committee. However, one debate on this statute was recorded and Plaintiff Bown submitted to the Court a transcript of that debate in the House. The transcript indicates that several House members wanted prayer to be returned to public school classrooms and, in some instances, believed that this legislation would accomplish their desire. That same transcript shows, however, that a nearly equal number of other House members who spoke disclaimed any religious purpose, stating, for example, "This is not a prayer bill," as follows:

> I sat on the subcommittee and heard the debate regarding this particular bill. And the subcommittee feeling that it was important that our children have just one single solitary moment in the day before they started their day that that may be a centering moment for them. This is not a prayer bill. This is a centering moment bill.
>
> My father who is 91 years old in his message to me when I was a kid—he wrote it in a baby book—told me of the importance of solitude, of the importance of just taking some time to hear oneself speak and to hear silence. And that is important sometimes in starting the day, and that's what this bill is all about.

Transcript of House Debate on Senate Bill 396, at 31.

Georgia's Moment of Quiet Reflection in Schools Act was signed by Governor Zell Miller and became effective July 1, 1994. The Act does not provide for any penalty against, or deprivation of any rights of, individuals who do not take part in the brief period of quiet reflection.

B. *Implementation of the Act by Defendants Gwinnett County School District and Superintendent Thompson*

Prior to the implementation of the Act, Plaintiff Bown expressed his objection to the Moment of Quiet Reflection in Schools Act. In a letter, dated July 25, 1994, to Superintendent Thompson, Plaintiff Bown indicated that "it is now my legal responsibility to force every student in my classroom to remain utterly quiet for sixty seconds each morning." Exhibit B to Plaintiff's Brief. In that letter, Plaintiff questioned how subsection (c) of the Act would be implemented and expressed concern over his potential "legal liability ... from students." Exhibit B to

Plaintiff's Brief. Plaintiff's letter does not seek religious "accommodation" or indicate that the Act violates Plaintiff's own religious beliefs.[4] Instead, Plaintiff's letter requests guidance on how to implement the Act in his classroom, stating:

> If I determine that my conscience will permit me to enforce this law, what guidance can you give me on exceptions to the absolute ban on speech during the "moment of quiet reflection?"

Exhibit B to Plaintiff's Brief.

In response to Plaintiff's inquiry, Steve Spellman, Administrative Assistant to the School Board and Superintendent, provided Plaintiff with an Administrative Bulletin sent to all administrators in the school system. The Administrative Bulletin responds to some of the questions in Plaintiff's letter by noting, in pertinent part, as follows:

> It is important that we recommend that teachers and administrators do not suggest or imply that students should or should not use that time for prayer. If a student asks, a teacher should advise a student that if the student desires to have a quiet prayer, he or she may do so. The statute specifically says "moment of quiet reflection." This clearly precludes students using the moment of quiet reflection to pray audibly, singly or in unison. We should not allow or tolerate any coercion or overbearing by some students to force others to pray. Nevertheless, we should be tolerant of non-disruptive, nonsectarian, non-proselytizing, student initiated prayer so long as it does not occur during the moment of quiet reflection; otherwise, it will not be a moment of *quiet* reflection. This time is not intended to be and shall not be conducted as a religious service or exercise, but considered as an opportunity for a

moment of silent reflection on the anticipated activities of the day.

Exhibit C to Plaintiff's Brief.

Prior to the school year beginning, Plaintiff Bown met with Delores Hendrix, Principal of South Gwinnett High School, and complained about having to implement the statute. In part to alleviate Plaintiff's concern, the school board decided that the Principal at each high school, rather than individual homeroom teachers, would read the announcement over the intercom in the morning. Principal Hendrix and Superintendent Thompson decided that at the beginning of each school day, the Principal should make this announcement over the intercom: "As we begin our day, let us take a few moments to reflect quietly on our day, our activities and what we hope to accomplish." Plaintiff's dep. at 234. According to the Defendant school system, this procedure was selected to insure that the moment of silence is handled the same way every day and to insure that teachers are not required to make the announcement or remember to do it. Also, according to this procedure, the teacher has nothing to do during the moment other than to be quiet.

On August 22, 1994, the first day of the 1994–95 school year, Ms. Hendrix made the above announcement. At the conclusion of the announcement, Plaintiff Bown advised his high school class, "You may do as you wish. That's your option. But I am going to continue with my lesson."[5] Plaintiff's dep. at 234. Plaintiff then refused to be silent and continued to talk. During the remainder of that class and the rest of the school day, Plaintiff passed out copies of the Act and discussed his views with his students.

During the moment of silence and throughout the school day, no student tried to lead other students in prayer or tried to pray out loud, or otherwise caused any disruption.

---

**4.** Later, in his deposition, Plaintiff Bown testified that he considered himself a Christian who has had a "born-again experience" and whose religious views "coincide most appropriately with the Universal Unitarians." Plaintiff's dep. at 145, 148. Plaintiff also stated his belief that the Act favors Christians, but violates his rights because he has a "religious belief" that all religions should be respected. Plaintiff's dep. at 153.

**5.** Immediately prior to the first day of class, Plaintiff Bown contacted the media and participated in a radio interview regarding his objections to the Act. Plaintiff invited a newspaper reporter to attend his class on the first day.

Plaintiff was never called upon to make any decisions regarding whether any particular student's conduct was prohibited by the Act. According to the Plaintiff, two students, at the most, placed Bibles on their desks and one bowed her head while Plaintiff was talking during the moment of quiet reflection. Plaintiff took no steps and made no decisions with regard to the conduct of these students, nor was he asked to do so by the school administration.

That afternoon Plaintiff Bown, Superintendent Thompson, and Principal Hendrix met. During that conference, the Superintendent reviewed the attempt made to respond to Plaintiff's concerns by providing Plaintiff with the Administrative Bulletin and having the Principal conduct the moment of silence. The Superintendent questioned Plaintiff whether he understood the Principal's expectations of him. Plaintiff Bown understood that all he was required to do was to be silent for sixty seconds, but Plaintiff contended that even passively supporting the Act by being silent violated his personally held religious beliefs.

Defendant Thompson then brought the meeting to a close by saying to Plaintiff that all he had to do was to be silent and nondisruptive during the moment of quiet reflection, as follows:

> I thought that it was important that he understood from the superintendent what the expectation was and the expectation was not that he could wreck the moment of silent reflection. The expectation was that he not disrupt students during the moment of quiet reflection, that all he had to do was stand there and be quiet, that it was expected that he not be disruptive. I asked him if he understood that, and he said that he did. I asked him if he could comply with that. He said he didn't know. In fact, he said could I have a moment of silence to think about it.

Testimony of Defendant George G. Thompson at September 22, 1994 Hearing before Gwinnett County Board of Education, at 282 [39–1]. Plaintiff states that he made the comment, "[c]an I have a moment to reflect?" Plaintiff's dep. at 273.

On several occasions, Plaintiff asked the Superintendent what would be the consequences of his refusal to be quiet during the moment. According to Defendant Thompson:

> I explained to him that it would be my intent to take disciplinary action if it was his intent to disrupt the students' moment of quiet reflection and that disciplinary action could be and probably would be termination through a process that he would be entitled to that could include a hearing before the Board or the Professional Practices Commission, if that pleasured the Board to request them to do that.

Testimony of Defendant George G. Thompson at September 22, 1994 Hearing before Gwinnett County Board of Education, at 284 [39–1]. Plaintiff Bown asked for, and was given, overnight to consider his course of action.

The next morning on August 23, 1994, Plaintiff advised the Principal that "the answer is no." Plaintiff's dep. at 284. Plaintiff then left the school. As a result of Plaintiff Bown's conduct, the Superintendent suspended Plaintiff Bown with pay until a hearing could be held on the Superintendent's recommendation that Plaintiff's employment be terminated.

On September 21 and 22, 1994, the Gwinnett County Board of Education conducted the termination hearing required by state law. After hearing all evidence presented, the Board of Education voted unanimously to terminate Plaintiff's employment with the Gwinnett County Board of Education. At the hearing, Plaintiff Bown appeared with his attorney but did not present evidence.

## II. CONCLUSIONS OF LAW

Plaintiff Bown requests that the Court find Georgia's Moment of Quiet Reflection in Schools Act unconstitutional in its entirety and grant a permanent injunction against implementation and enforcement of the Act.

Defendants Thompson and the Gwinnett County School District move the Court to declare that the entire Act is constitutional. Alternatively, Defendants Thompson and

Gwinnett County School District contend that Plaintiff does not have standing to challenge the constitutionality of subsection (c) of the Act as neither the Plaintiff nor any other school official applied subsection (c) of the Act on August 22, 1994 or any other date.

Defendants Miller and Bowers filed a Motion to Dismiss on the grounds of abstention, failure to state a case of actual controversy required for a declaratory judgment action, Eleventh Amendment immunity, and qualified immunity. Alternatively, Defendants Miller and Bowers filed a Motion for Summary Judgment on the grounds that the Act is constitutional.

The Court first will address abstention and the requirements of standing and an actual controversy for a declaratory judgment action.

### A. Abstention

Defendants Miller and Bowers assert that this federal court should abstain because the state law is uncertain and a state court's construction or clarification of the state law may obviate the need for a federal court's constitutional ruling. *Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ In this case, abstention is inappropriate because a state construction of the challenged law will not moot or modify the constitutional questions here. *Duke v. James,* 713 F.2d 1506, 1510 (11th Cir.1983). Plaintiff's Amended Complaint and Second Amended Complaint allege Establishment Clause and Free Exercise violations that will require a ruling on the Act's constitutionality under the United States Constitution regardless of how state courts construe the Act. The Act is not vague and arguably does not require statutory construction. In any event, even if a state court resolves any issues of statutory construction, the federal court still must apply federal law in deciding whether the statute is constitutional under the three-pronged test articulated by the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602,

612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971), and discussed *infra.* In addition, the Supreme Court has emphasized a federal court's duty to respect a suitor's choice of a federal forum for the hearing of his federal constitutional claims. *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). The Court declines to abstain from exercising its jurisdiction in this case.

### B. Standing and Actual Controversy under the Declaratory Judgment Act

■ Defendants contend that Plaintiff lacks standing to seek a declaratory judgment and fails to satisfy the requirement of actual controversy necessary for a declaratory judgment action. However, the Court finds that this case presents an actual controversy and that Plaintiff has standing to contest the constitutionality of the Moment of Quiet Reflection in Schools Act for several reasons.

First, Plaintiff Bown was a classroom teacher and the Act specifically states that the "teacher in charge shall, at the opening of school upon every school day, conduct a brief period of quiet reflection for not more than 60 seconds...." O.C.G.A. § 20–2–1050 (Supp.1995). While the defendant Gwinnett County School District chose to have the announcement made by the Principal (apparently as the ultimate teacher in charge) over the intercom, Plaintiff Bown was the teacher actually in the classroom at the time of the announcement, and thus was the teacher in charge of that classroom during the period of quiet reflection.

Second, prior to the start of the school year, Plaintiff Bown had expressed his objection to implementing the Act, but the Principal required Plaintiff to be silent and comply with the Act. When Plaintiff refused to remain silent during the moment of quiet reflection, Plaintiff was suspended from employment the next day. Plaintiff's initial suspension and later termination was arguably, in part, due to his refusal to remain quiet and abide by the Act.[6] The facts present an

---

6. Defendants assert that Plaintiff Bown was never charged by the Board of Education or the

Superintendent with failing to enforce the statute but was terminated for refusing to be silent him-

actual controversy and Plaintiff has standing to challenge the constitutionality of the Act. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *International Soc. for Krishna Consciousness of Atlanta v. Eaves,* 601 F.2d 809, 819 (5th Cir.1979); *American Booksellers Ass'n v. McAuliffe,* 533 F.Supp. 50 (N.D.Ga.1981).

Defendants seem to concede that Plaintiff may have standing to challenge subsections (a) and (b) of the Act which authorize the 60 second period of quiet reflection, but contend that Plaintiff does not have standing to attack subsection (c) which provides that the provisions in subsections (a) and (b) shall not prevent "student initiated voluntary school prayers ... which are nonsectarian and nonproselytizing in nature." O.C.G.A. § 20–2–1050(c) (Supp.1995). Defendants emphasize that no student initiated prayer of any kind occurred during the moment of silence in Plaintiff's classroom, and therefore, that Plaintiff was never required to act under subsection (c) to stop or to allow any prayer by any student in his classroom.

Nonetheless, this does not defeat the existence of an actual case or controversy regarding subsection (c). Although it is undisputed that no student led prayer ever occurred in Plaintiff's classroom or anywhere at Plaintiff's school on the day in issue, Plaintiff's status as a teacher in charge of the classroom, Plaintiff's objection to implementing the Act in his classroom, and Plaintiff's suspension and ultimate termination are sufficient to afford Plaintiff standing to challenge the Act in its entirety. As discussed *infra,* subsection (c) does not require affirmative action by anyone as there is nothing in subsection (c) to implement. Thus, the fact that Plaintiff did not have to take any action under subsection (c) does not defeat Plaintiff's standing to challenge subsection (c) of

the Act, at least as to its facial constitutionality.

In short, factual issues clearly exist regarding whether Plaintiff's disruption of the moment of quiet reflection led, at least in part, to his suspension and ultimate termination of his employment. Plaintiff has alleged sufficient injury arguably traceable to his refusal to comply with the Act to create an actual controversy, affording Plaintiff standing to challenge the Act in its entirety and entitling Plaintiff to file a declaratory judgment action. *See, e.g., Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Steffel v. Thompson,* 415 U.S. 452, 458, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *Emory v. Peeler,* 756 F.2d 1547 (11th Cir.1985).

**C. *Constitutionality of Georgia's Moment of Quiet Reflection in Schools Act***

**1. *The Lemon Test***

■ Plaintiff Bown asserts that Georgia's Moment of Quiet Reflection in Schools Act, codified in O.C.G.A. § 20–2–1050 (Supp. 1995), violates the Establishment Clause of the First Amendment of the United States Constitution. The First Amendment prohibits any "law respecting an establishment of religion or prohibiting the free exercise thereof...." U.S. CONST. amend. I. There is no bright line test for determining whether a statute violates the Establishment Clause. However, the United States Supreme Court has prescribed a three prong inquiry for determining whether a statute violates the Establishment Clause. *Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985); *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Commonly known as the *Lemon* test, "[f]irst, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ...; finally, the statute must not foster an 'excessive government entangle-

---

self. Since Defendants had the Principal make the announcement, Defendants assert that Plaintiff did not have to make any decisions regarding the implementation of the statute in his classroom nor discipline students because of their violation of the statute. Despite Defendants Gwinnett County and Thompson's protestations

otherwise, Plaintiff Bown, as the teacher in charge of the classroom, was necessarily involved in the moment of silence by his presence as the teacher in charge in the classroom and was directly affected when suspended the next day.

ment with religion.'" *Wallace v. Jaffree*, 472 U.S. 38, 55–56, 105 S.Ct. 2479, 2489, 86 L.Ed.2d 29 (1985) (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971)). Under the *Lemon* test, the statute must overcome each of the three requirements, or it cannot be upheld. *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980); *Jager v. Douglas County Sch. Dist.*, 862 F.2d 824 (11th Cir.1989).

While several Justices have advocated discarding or reexamining the *Lemon* test,[7] nonetheless the *Lemon* test has not been overruled or modified but has been applied in 31 Establishment Clause cases since 1971. *Lee v. Weisman*, 505 U.S. 577, 620 n. 4, 112 S.Ct. 2649, 2663 n. 4, 120 L.Ed.2d 467 (1992). Only once since *Lemon* has the Supreme Court addressed an Establishment Clause issue without resort to the tripartite test. *See Marsh v. Chambers*, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). In *Marsh*, the Supreme Court upheld the Nebraska legislature's beginning its sessions with a prayer by a chaplain paid with state funds. *Id.* The Eleventh Circuit recently held that "[b]ecause *Marsh* was based on more than 200 years of the 'unique history' of legislative invocations, it has no application to .... the 'special context of the public elementary and secondary school system,' [where] the Supreme court 'has been particularly vigilant in monitoring compliance with the Establishment Clause.'" *Jager v. Douglas County Sch. Dist.*, 862 F.2d 824, 828 (11th Cir.1989). The Eleventh Circuit explained that "[s]ince the Continental Congress and the First Congress opened their sessions with prayers, the *Marsh* Court concluded that the drafters of the Establishment Clause undoubtedly perceived no threat from legislative prayer and did not intend to prohibit legislative invocations." *Jager*, 862 F.2d at 828. Other than in the scenario in *Marsh*, the Eleventh Circuit instructed that the *Lemon* test still guides a court's analysis in Establishment Clause cases. *Id.* at 829.[8]

#### 2. Secondary Purpose

■ Under the *Lemon* test, the Court first must inquire into the purpose of the legislature in enacting the moment of silence law in this case. *Jaffree*, 472 U.S. at 55, 105 S.Ct. at 2488. "No consideration of the second or third criteria is necessary if the statute does not have a clearly secular purpose." *Jaffree*, 472 U.S. at 56, 105 S.Ct. at 2489. The purpose prong of the *Lemon* test asks whether the government intends to convey a message of endorsement or disapproval of religion. *Id.* at 55, 61, 105 S.Ct. at 2488, 2492; *Lynch v. Donnelly*, 465 U.S. 668, 690–91, 104 S.Ct. 1355, 1368, 79 L.Ed.2d 604 (1984). The Establishment Clause, unlike the Free Exercise Clause, does not depend upon any showing of direct governmental compulsion but is violated by the enactment of laws which endorse or disapprove of religion whether those laws operate directly to coerce non-observing individuals or not. *Jaffree*, 472 U.S. at 60 n. 51, 105 S.Ct. at 2492 n. 51; *Engel v. Vitale*, 370 U.S. 421, 430, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962).[9]

---

7. *See generally Lee v. Weisman*, 505 U.S. 577, 644–45, 112 S.Ct. 2649, 2685, 120 L.Ed.2d 467 (1992) (Scalia, J., dissenting, joined by Rehnquist, C.J., White, J., and Thomas, J.) (listing cases where Justices criticize *Lemon* ). Numerous articles also criticize the *Lemon* test as leading to disparate and conflicting results and as generating ad hoc judgments incapable of being reconciled on any principled basis. Douglas Laycock, *A Survey of Religious Liberty in the United States*, 47 Ohio St. L.J. 409, 450 (1986); Jesse H. Choper, *The Religion Clauses of the First Amendment: Reconciling the Conflict*, 41 U.Pitt.L.Rev. 673, 680 (1980); Thomas A. Schweitzer, *Lee v. Weisman and the Establishment Clause: Are Invocations and Benedictions at Public School Graduations Constitutionally Unspeakable?*, 69 U.Det.Mercy L.Rev. 113 (1992).

8. All parties in this case analyzed Georgia's Moment of Quiet Reflection in Schools Act primarily under the *Lemon* test and appear to agree that the *Lemon* test is currently the appropriate standard.

9. The Fifth Circuit recently opined that "in the time between *Lemon* and *Lee*, the [Supreme] Court has used five tests to determine whether public schools' involvement with religion violates the Establishment Clause." *Jones v. Clear Creek Indep. Sch. Dist.*, 977 F.2d 963, 966 (5th Cir. 1992), *cert. denied*, — U.S. ——, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993). In *Clear Creek*, the Fifth Circuit analyzed the Resolution in issue under these five tests: secular purpose, primary effect, entanglement, endorsement and coercion. However, several Justices in *Lee v. Weisman*, 505 U.S.

This first inquiry begins by examining the plain meaning of the language used in Georgia's Moment of Quiet Reflection in Schools Act. The preamble to the Act sets forth an explicitly secular legislative purpose and states that "in today's hectic society, all too few of our citizens are able to experience ever a moment of quiet reflection before plunging headlong into the day's activities." Moment of Quiet Reflection in Schools Act, Act No. 770, § 1, 1994 Ga.Laws 256, 256 (1994). The preamble continues that "our young citizens are particularly affected" and "our young, and society as a whole, would be well served if students were afforded a moment of quiet reflection at the beginning of each day." *Id.* The Georgia legislature expressly included in the preamble the secular purpose that a very brief period of silence at the beginning of the school day would benefit young students in today's hectic society.

Subsection (b) of the Act also proposes the secular topic on which students may reflect: "the anticipated activities of the day." O.C.G.A. § 20–2–1050 (Supp.1995). Subsection (b) states that the moment of silence will provide "an opportunity for a moment of silent reflection on the anticipated activities of the day." *Id.* The only encouragement the statutory language provides to students is secular. Likewise, this was the secular topic the Principal at South Gwinnett High School announced over the intercom to Plaintiff Bown and his students. On its face, subsection (b) expressly disclaims any religious purpose for the Act. Subsection (b) specifically prohibits conducting the moment of silence as a "religious service or exercise." *Id.*

This secular purpose not only is contained in the Act's language, but also is demonstrated in the legislative history of the Act. The sponsor of the Act, Senator David Scott, testified that violence occurring in high schools motivated him to sponsor the Act.

Senator Scott had served as Chairman of the Senate Education Committee, Chairman of the Youth, Aging and Human Ecology Committee, and a member of the State Violence Task Force Committee to prevent violence in schools. Senator Scott testified that guns and violence are the leading cause of death, particularly among African–American youngsters today. Senator Scott represented an urban district in Atlanta for twelve years as a Senator and eight years previously in the House of Representatives. Senator Scott felt a need for young people to have an opportunity to pause at the beginning of the day to collect their thoughts. Senator Scott observed that after a series of killings on school campuses, students often came together and had a moment of quiet reflection. Senator Scott testified that if a moment of internal reflection is of value after a death, then surely it would be beneficial at the beginning of each school day. Senator Scott testified that "it was not an effort to bring prayer back into the schools," but "was one of three bills I introduced to deal with the violence among our young people." Scott dep. at 16–17.

Plaintiff Bown contends that the stated legislative purpose in the Act and by the Act's sponsors is a sham. Plaintiff stresses the remarks of eight Georgia legislators on the House floor, which indicate that each of them wanted prayer returned to schools. Plaintiff Bown also emphasizes that the initial bill contained only subsections (a) and (b), but the final bill added subsection (c), which provides that nothing in the bill shall prevent nonsectarian and nonproselytizing voluntary school prayer. According to Plaintiff, the legislators' remarks, along with the addition of subsection (c) in the Act's final form, destroy the purported secular purpose stated in the preamble and subsection (b) of the Act.[10]

577, 618–26, 112 S.Ct. 2649, 2671–76, 120 L.Ed.2d 467 (1992), expressed their view that coercion is not required and is not part of the test in Establishment Clause cases.

10. This Court discusses subsection (c) of the Act more extensively under the second prong of the *Lemon* test. This Court recognizes that Plaintiff Bown strongly urges that the language of subsec-

tion (c), and how it was enacted, reveal a religious purpose and make the Act's stated secular purpose a sham. While some Georgia House legislators may have had a religious motive in sponsoring the Davis amendment, that amendment in its entirety was not passed by the Georgia Senate. While parts of the Davis amendment ultimately may have become included as subsection (c) of the Act, the Court finds that an exami-

The stated legislative purpose of the Act here is in the text of the challenged statute. Both the preamble and the Act itself state a secular purpose for the Act. "[T]he inquiry into the purpose of the legislature in enacting a moment of silence law should be deferential and limited." *Jaffree,* 472 U.S. at 74, 105 S.Ct. at 2499 (O'Connor, J., concurring). "Since there is arguably a secular pedagogical value to a moment of silence in public schools, courts should find an improper purpose behind such a statute only if the statute on its face, in its official legislative history, or in its interpretation by a responsible administrative agency suggests it has the primary purpose of endorsing prayer." *Id.* at 75, 105 S.Ct. at 2499; *see also Edwards v. Aguillard,* 482 U.S. 578, 586, 107 S.Ct. 2573, 2579, 96 L.Ed.2d 510 (1987) (Court "is normally deferential to a [legislative] articulation of a secular purpose"); *Mueller v. Allen,* 463 U.S. 388, 394–95, 103 S.Ct. 3062, 3067, 77 L.Ed.2d 721 (1983) (Court is "reluctan[t] to attribute unconstitutional motives to the States, particularly when a plausible secular purpose for the State's program may be discerned from the face of the statute."). Both the Act and the official legislative purpose in the preamble of the Act set forth an explicit secular purpose of providing students, in today's hectic society, with a moment of silence to reflect on the anticipated activities of the day before plunging into the day's activities. The Act itself also contains a statement that the moment of quiet reflection is not intended and shall not be conducted as a religious service. The Act not only states a secular purpose but also disclaims a religious purpose. Under these circumstances, this Court defers to the stated legislative purpose in Georgia's Moment of Quiet Reflection in Schools Act. *See Jaffree,* 472 U.S. at 75, 105 S.Ct. at 2499 (O'Connor, J., concurring).

Alternatively, even if this Court were to go behind the stated secular purpose in the Act and consider Plaintiff's evidence about certain legislators' personal, subjective intent, Plaintiff's evidence is contradicted by Defendants' evidence. Plaintiff emphasizes that thirty-six legislators sponsored the Davis amendment and that eight legislators in the House made remarks on the House floor about passing this Act in order to return prayer to the schools. Plaintiff stresses that the history of the legislative process shows that the Act could not be passed with only subsections (a) and (b). According to Plaintiff, the fact that certain legislators insisted on the addition of subsection (c) shows the stated legislative purpose is a sham. However, this evidence is contradicted by testimony of numerous other legislators, such as the Act's sponsors, as well as other evidence about the legislative process of this Act, as outlined above.

The Court first finds that the stated purpose of a few legislators in voting for the Act demonstrates only the legislators' personal motives in voting for the Act, but does not establish the legislative purpose of the Act.[11] In some contexts the Supreme Court has eschewed reliance on individual legislators' expression of their subjective motivation in determining legislative purpose, *see Palmer v. Thompson,* 403 U.S. 217, 224, 91 S.Ct. 1940, 1944, 29 L.Ed.2d 438 (1971), but in other factual situations, the Court has taken these expressions of intent into account. *See Edwards v. Aguillard,* 482 U.S. 578, 586–87, 107 S.Ct. 2573, 2579, 96 L.Ed.2d 510 (1987). In the particular factual circumstances here, it is not clear that such an inquiry would be appropriate in light of the Supreme Court's more recent decision in *Board of Education v. Mergens,* where the Court said, "[e]ven if some legislators were motivated by a conviction that religious speech in particular was

---

nation of the entire legislative history shows that the legislative purpose of the Act, including subsection (c), is not primarily religious but is secular and that the stated legislative purpose in the Act is not a sham for the reasons discussed above and *infra* at pp. 1580–83 and note 25.

**11.** There is an important distinction between the motive and purposes of individual legislators and an institutional legislative purpose. In *May v.*

*Cooperman,* 572 F.Supp. 1561, 1573 (D.N.J. 1983), the district court observed that "[l]egislators may have the purest of personal motives and produce unconstitutional legislation, and contrariwise individual legislators with wrongful motives may vote for a bill and produce legislation which is both beneficial and constitutional. This is illustrated in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)." *May,* 572 F.Supp. at 1573.

valuable and worthy of protection, that alone would not invalidate the Act, because what is relevant is the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law." *Board of Educ. of Westside Community Sch. v. Mergens,* 496 U.S. 226, 249, 110 S.Ct. 2356, 2371, 110 L.Ed.2d 191 (1990). Otherwise, one or a few legislators could have veto power over a bill simply by injecting into the debate statements avowing a religious purpose for the statute. That certain Georgia legislators expressed their individual desire for prayer to be returned to the classroom reveals nothing about the subjective intent of the larger majority of House members or any of the fifty-six Georgia Senate members regarding the purpose of the bill as finally enacted. Also, other Georgia legislators expressed a secular purpose in passing the Act.

In any event, alternatively considering all of the evidence about the legislative purpose of the Act, the intent of the legislators offered by the parties, and how subsection (c) was added to the Act during the legislative process, this Court, as the fact finder, concludes that the preponderance of, if not the overwhelming, evidence in this case shows that the legislative purpose of the Act is the secular purpose of providing a moment of silence for students at the beginning of each school day before they plunge into the day's activities, and not to return prayer to the schools or impermissibly to endorse prayer. The Court finds that the stated legislative purpose is secular, sincere, and not a sham.[12]

■ In reaching this conclusion, the Court notes that the Supreme Court has not interpreted the first prong of *Lemon* as requiring that a statute have "exclusively secular" objectives. "[A] statute that is motivated in part by a religious purpose may satisfy the first criterion, see, e.g., *Abington School District v. Schempp,* 374 U.S. 203, 296–303, 83 S.Ct. 1560, 1610–1614, 10 L.Ed.2d 844 (1963) (BRENNAN, J., concurring)...." *Wallace v. Jaffree,* 472 U.S. 38, 56, 105 S.Ct. 2479, 2489, 86 L.Ed.2d 29 (1985); *Lynch v. Donnelly,* 465 U.S. 668, 681 n. 6, 104 S.Ct. 1355, 1363 n. 6, 79 L.Ed.2d 604 (1984).[13] Only

---

**12.** The facts here are antithetical to the facts surrounding the particular Alabama statute held unconstitutional in *Wallace v. Jaffree.* See *Wallace v. Jaffree,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). In that case, the parties agreed that Alabama's 1978 statute, Ala.Code § 16–1–20, was constitutional as it authorized a one minute period of silence in all public schools "for meditation." *Jaffree,* 472 U.S. at 67, 105 S.Ct. at 2495 (O'Connor, J., concurring). However, Alabama's 1981 statute in Ala.Code § 16–1–20.1 authorized a period of silence "for meditation or voluntary prayer." *Jaffree,* 472 U.S. at 40 n. 2, 105 S.Ct. at 2481 n. 2. The Supreme Court found that the unrebutted evidence was that the 1978 statute was constitutional but that Alabama enacted the 1981 statute adding voluntary prayer with the specific legislative purpose to return prayer to schools. *Id.* at 60–61, 105 S.Ct. at 2491–92. The majority opinion commented that:

> [t]he legislative intent to return prayer to the public schools is, of course, quite different from merely protecting every student's right to engage in voluntary prayer during an appropriate moment of silence during the schoolday. The 1978 statute already protected that right, containing nothing that prevented any student from engaging in voluntary prayer during a silent minute of meditation.

*Jaffree,* 472 U.S. at 59, 105 S.Ct. at 2491 (footnote omitted).

The State of Alabama *admitted* that its purpose in enacting its statute was to " 'clarify [the State's] intent to have prayer as part of the daily classroom activity' " and " 'to return voluntary prayer to public schools.' " *Jaffree,* 472 U.S. at 57 n. 44, 105 S.Ct. at 2490 n. 44 (citations omitted). This admission was by the Alabama Governor in an Answer to Plaintiff's Complaint and not just a statement by a few individual legislators. Confronted with this admission, with the district court's finding of fact that the Alabama statute's purpose was "to encourage a religious activity," and with the state's failure to "present evidence of any secular purpose," the Supreme Court's conclusion that the Alabama legislature enacted the 1981 statute "for the sole purpose of expressing the State's endorsement of prayer activities" was not surprising. *Jaffree,* 472 U.S. at 57, 60, 105 S.Ct. at 2490, 2491.

In contrast, Georgia's 1994 Moment of Quiet Reflection in Schools Act replaced a 1969 statute which provided for "silent prayer or meditation." *See supra* note 2. The 1994 Georgia statute deleted the 1969 statute's reference to silent prayer and provided for only "a brief period of quiet reflection for not more than 60 seconds ... on the anticipated activities of the day." *Compare* O.C.G.A. § 20–2–1050 (1992) *with* O.C.G.A. § 20–2–1050(a), (b) (Supp.1995). If anything, Georgia's current statute is similar to Alabama's 1978 statute which the parties agreed was constitutional in *Wallace v. Jaffree.*

**13.** In *Wallace v. Jaffree,* Justice Powell noted that if a requirement that the statute must have an exclusively secular purpose existed, much con-

statutes motivated entirely by a purpose to advance religion fail the first prong of *Lemon.* *See Jaffree,* 472 U.S. at 56, 105 S.Ct. at 2489; *see also Lynch v. Donnelly,* 465 U.S. 668, 678, 104 S.Ct. 1355, 1361, 79 L.Ed.2d 604 (1984); *Stone v. Graham,* 449 U.S. at 39, 41, 101 S.Ct. at 193 (1980); *Epperson v. Arkansas,* 393 U.S. 97, 107–09, 89 S.Ct. 266, 272–73, 21 L.Ed.2d 228 (1968); *Engel v. Vitale,* 370 U.S. 421, 424–25, 82 S.Ct. 1261, 1263–64, 8 L.Ed.2d 601 (1962); *Abington Sch. Dist. v. Schempp,* 374 U.S. 203, 223–24, 296–303, 83 S.Ct. 1560, 1572, 1610–14, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring). The inquiry is focussed on whether there is a primary secular purpose for the statute and not whether any religious purpose can be uncovered.

Likewise, Chief Justice Burger, writing for the Supreme Court in *Lynch v. Donnelly,* commented that the Court "has invalidated legislation or governmental action on the ground a secular purpose was lacking, but only when it has concluded there was no question that the statute or activity was motivated wholly by religious considerations." *Lynch,* 465 U.S. at 680, 104 S.Ct. at 1362 (citations omitted). "Even where the benefits to religion were substantial, as in *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947); *Board of Education v. Allen,* 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968); *Walz [v. Tax Comm'n,* 397 U.S. 664, 671, 90 S.Ct. 1409, 1412, 25 L.Ed.2d 697 (1970)], and *Tilton [v. Richardson,* 403 U.S. 672, 677–78, 91 S.Ct. 2091, 2095, 29 L.Ed.2d 790 (1971)], we saw a secular purpose and no conflict with the Establishment Clause." *Id.*

Therefore, even with the addition of subsection (c) to the Act and even if this Court were not resolving the conflict in evidence about legislative purpose and some legislators' intent, the record at a minimum shows that some legislators had a secular purpose and others a religious purpose for the Act. Under any of the above analyses and considering the entire record, the Court finds that the primary purpose of Georgia's Moment of Quiet Reflection in Schools Act was secular and the Act passes the first prong of the *Lemon* test.

### 3. *Primary Effect*

The second prong of the *Lemon* test requires this Court to determine whether the primary effect of Georgia's Moment of Quiet Reflection in Schools Act advances or inhibits religion.[14] In this particular case, that inquiry becomes whether the effect of the Act is to advance religion by encouraging prayer or conveying a message that encourages prayer in public schools.

The Supreme Court has held consistently that not every law that makes a reference to prayer has the effect of encouraging or advancing religion. *See Lynch,* 465 U.S. at 683, 104 S.Ct. at 1364; *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952); *Allen v. Consolidated City of Jacksonville, Fla.,* 719 F.Supp. 1532, 1538 (M.D.Fla.1989). Such a view would necessitate the abolition of the National Day of Prayer, 36 U.S.C. § 169h, the elimination of "under God" from our pledge of allegiance, the removal of "in God we trust" from our currency and the removal of many other references and calls to "God" and "prayer" in our state and na-

---

duct and legislation approved by the Supreme Court in the past would have been invalidated. *Jaffree,* 472 U.S. at 63, 105 S.Ct. at 2493 (Powell, J., concurring). *See, e.g., Walz v. Tax Comm'n of the City of New York,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (property tax exemption for religious organizations upheld); *Everson v. Board of Educ. of Ewing,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (holding that a township may reimburse parents for the cost of transporting their children to parochial schools).

**14.** Some commentators argue that *Lemon's* purpose and effect are like two sides of a coin and

that the Supreme Court has not kept the secular purpose and primary effect prongs of the *Lemon* test distinct. Thomas A. Schweitzer, *Lee v. Weisman and the Establishment Clause: Are Invocations and Benedictions at Public School Graduations Constitutionally Unspeakable?,* 69 U.Det.Mercy L.Rev. 113, 196–97 (1992); Michael A. Paulsen, *Religion, Equality, and the Constitution: An Equal Protection Approach to Establishment Clause Adjudication,* 61 Notre Dame L.Rev. 311, 344 (1986); Gail Merel, *The Protection of Individual Choice: A Consistent Understanding of Religion Under the First Amendment,* 45 U.Chi.L.Rev. 805, 826 (1978).

tional affairs and laws.[15] *Tilton v. Richardson,* 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971) (upheld beneficial grants for higher education); *Walz v. Tax Comm'n of the City of New York,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (upheld tax exemptions for religious organizations); *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) (upholding mandatory Sunday closing law as constitutional); *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952) (upholding released time from school for off-campus religious instruction as constitutional); *Everson v. Board of Educ.,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (upheld provision of school transportation).

The Supreme Court also has indicated that the purpose of the Establishment and Free Exercise Clauses of the First Amendment is "to prevent, as far as possible, the intrusion of either [the church or the state] into the precincts of the other.... [t]otal separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable." *Lemon,* 403 U.S. at 614, 91 S.Ct. at 2112 (citations omitted). In *Lynch v. Donnelly,* the Supreme Court further clarified that the "effect prong of the *Lemon* test is properly interpreted not to require invalidation of a government practice merely because it in fact causes, even as a primary effect, advancement or inhibition of religion." *Lynch v. Donnelly,* 465 U.S. 668, 691–92, 104 S.Ct. 1355, 1369, 79 L.Ed.2d 604 (1983). According to *Lynch,* "[w]hat is crucial is that a government practice not have the effect of communicating a message of government endorsement or disapproval of religion. It is only practices having that effect, whether intentionally or unintentionally, that make religion relevant, in reality or public perception, to status in the political community." *Lynch,* 465 U.S. at 692, 104 S.Ct. at 1369 (emphasis supplied). In that case, the Supreme Court concluded that the creche displayed at Christmas time "cannot fairly be understood to convey a message of government endorsement of religion." *Id.* at 693, 104 S.Ct. at 1370. *Wallace v. Jaffree* reaffirmed that "*Lemon's* inquiry as to the purpose and effect of a statute requires courts to examine whether government's purpose is to endorse religion and whether the statute actually conveys a message of endorsement." *Jaffree,* 472 U.S. at 69, 105 S.Ct. at 2496 (O'Connor, J., concurring).[16]

The concurring opinions by Justices Powell and O'Connor in *Wallace v. Jaffree* also provide guidance to the lower courts on how to apply the *Lemon* test to moment of silence statutes. Justices Powell and O'Connor in *Wallace v. Jaffree* expressly stated that some moment of silence statutes may be constitutional. *Jaffree,* 472 U.S. at 62, 70–74, 105 S.Ct. at 2492, 2497–99 (Powell, J., concur-

---

**15.** Although relying on an historical test not applicable here, the Supreme Court, nonetheless, commented in *Marsh v. Chambers,* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), that the invocation of "God save the United States and this Honorable Court" occurs at all sessions of the United States Supreme Court. In upholding the Nebraska Legislature's beginning its sessions with a prayer by a chaplain paid with state funds, the Supreme Court in *Marsh* concluded that "[t]o invoke Divine guidance on a public body entrusted with making the laws is not, in these circumstances, an 'establishment' of religion or a step toward establishment...." *Marsh,* 463 U.S. at 792, 103 S.Ct. at 3336.

**16.** This endorsement test does not replace the second prong of *Lemon* but simply adds, in Justice O'Connor's words, "analytic content" for *Lemon's* inquiry into "legislative purpose and effect." *Jaffree,* 472 U.S. at 69, 105 S.Ct. at 2496 (O'Connor, J., concurring). Justice O'Connor explained that:

"[a] statute that ostensibly promotes a secular interest often has an incidental or even a primary effect of helping or hindering a sectarian belief. Chaos would ensue if every such statute were invalid under the Establishment Clause.... The endorsement test does not preclude government from acknowledging religion or from taking religion into account in making law and policy. It does preclude government from conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred. Such an endorsement infringes the religious liberty of the nonadherent, for '[w]hen the power, prestige and financial support of government is placed behind a particular religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain.' *Engel v. Vitale, supra,* 370 U.S. at 431 [82 S.Ct. at 1267]...." *Jaffree,* 472 U.S. at 69–70, 105 S.Ct. at 2497 (O'Connor, Jr., concurring).

ring) (O'Connor, J., concurring). Justice O'Connor explains that "[a] state-sponsored moment of silence in the public schools is different from state-sponsored vocal prayer or Bible reading. First, a moment of silence is not inherently religious. Silence, unlike prayer or Bible reading, need not be associated with a religious exercise." *Id.* at 72, 105 S.Ct. at 2498 (O'Connor, J., concurring). As explained further by Justice O'Connor, "[s]econd, a pupil who participates in a moment of silence need not compromise his or her beliefs. During a moment of silence, a student who objects to prayer is left to his or her own thoughts, and is not compelled to listen to the prayers or thoughts of others." *Id.* Justice O'Connor notes that "[s]cholars and at least one Member of this Court have recognized the distinction and suggested that a moment of silence in public schools would be constitutional. *See Abington,* [374 U.S.] at 281 [83 S.Ct. at 1602], (BRENNAN, J., concurring)." [17] *Jaffree,* 472 U.S. at 72, 105 S.Ct. at 2498 (O'Connor, J., concurring). Justice O'Connor concludes that "[i]t is difficult to discern a serious threat to religious liberty from a room of silent, thoughtful schoolchildren." *Jaffree,* 472 U.S. at 73, 105 S.Ct. at 2498 (O'Connor, J., concurring).

Against this background of Supreme Court guidance, this Court's task is to determine if Georgia's Moment of Quiet Reflection in Schools Act embodies an impermissible government endorsement of prayer in public schools. The Court finds that the Act does not for numerous reasons. First, Georgia's Moment of Quiet Reflection in Schools Act is not associated with a religious exercise. In fact, the Act expressly states that the moment of silence "shall not be conducted as a religious service or exercise but shall be considered as an opportunity for a moment of silent reflection on the anticipated activities of the day." O.C.G.A. § 20–2–1050(b) (Supp. 1995). There is no evidence in the record that the implementation of the Act resulted in any oral or audible religious prayer by any of the teachers or students.

Second, the pupils participating in the moment of silence need not compromise his or her beliefs. During the moment of silence, the student is left to his or her own thoughts and is not compelled to listen to the prayers or thoughts of others. This moment of silence act in no way favors the child who chooses to pray silently during a moment of silence over the child who chooses to reflect on secular activities or no activities at all for that matter. While some students may use this moment of silence for secular thoughts about the day or other aspects of their lives, other students may indeed use this moment of silence to read their Bible silently or to bow their heads and say a prayer to themselves silently.[18] There is nothing unconstitutional about such conduct, however, as long as the student is silent. Momentary silence simply does not jeopardize either the religious liberties of any members of the community or the proper degree of separation between the spheres of religion and government. Momentary silence does not advance or inhibit religion. Providing this moment of silence for schoolchildren does not convey a government message advancing or inhibiting religion.[19] As Justice O'Connor concluded in

---

17. As for scholars, Justice O'Connor cited these publications in *Wallace v. Jaffree,* 472 U.S. at 62, 105 S.Ct. at 2493: L. TRIBE, AMERICAN CONSTITUTIONAL LAW § 14–6, at 289 (1978); P. Freund, *The Legal Issue, in* RELIGION AND THE PUBLIC SCHOOLS 23 (1965); Choper, *Religion in the Public Schools: A Proposed Constitutional Standard,* 47 MINN. L.REV. 329, 371 (1963); Kauper, *Prayer, Public Schools, and the Supreme Court,* 61 MICH.L.REV. 1031, 1041 (1963).

18. In *Wallace v. Jaffree,* Justice Powell observed that "[g]iven the types of subjects youthful minds are primarily concerned with, it is unlikely that many children would use a simple 'moment of silence' as a time for religious prayer. There are too many other subjects on the mind of the typical child. Yet there also is the likelihood that

some children, raised in strongly religious families, properly would use the moment to reflect on the religion of his or her choice." *Jaffree,* 472 U.S. at 66 n. 9, 105 S.Ct. at 2495 n. 9 (Powell, J., concurring).

19. Over the years the Supreme Court has declared invalid many non-coercive state laws and practices conveying a message of religious endorsement. *See Lee v. Weisman,* 505 U.S. 577, 616–18, 112 S.Ct. 2649, 2671, 120 L.Ed.2d 467 (1992); *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter,* 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). The Supreme Court has made it clear that it is not enough that the government refrain from requiring or compelling school prayer. A statute also must not convey a government en-

*Wallace v. Jaffree,* "[i]t is difficult to discern a serious threat to religious liberty from a room of silent, thoughtful schoolchildren." 472 U.S. at 73, 105 S.Ct. at 2498 (O'Connor, J., concurring).

The crucial question here is whether under the facts of this case, the State of Georgia has conveyed or attempted to convey the message that schoolchildren should use the moment of silence for prayer. The Act does not instruct schoolchildren to pray during the moment of silence but only to be silent and reflect on the anticipated activities of the day. The Act also does not prohibit schoolchildren from praying silently during the moment of silence. The Act is neutral.

Thus, after examining subsection (c) and the entire legislative history of the Act, the purpose of the Act, the language of the Act, and the administration of the Act under the facts in this record, the Court finds that Georgia's Moment of Quiet Reflection in Schools Act does not operate as a government endorsement of religion, does not have the primary effect of conveying a message of government endorsement of religion, and does not fail the second prong of the *Lemon* test.

Plaintiff Bown asserts that the inclusion of subsection (c) in Georgia's Moment of Quiet Reflection in Schools Act not only destroys the secular purpose of the Act, but also adds an impermissible government endorsement of religion to the Act, thereby rendering it unconstitutional. Subsection (a) provides for the sixty second period of quiet reflection. Subsection (b) provides that the period of quiet reflection is not intended to be and shall not be conducted as a religious exercise. Subsection (c) states that nothing in subsections (a) or (b) shall prevent student-initiated voluntary school prayer at school or school events. According to the Plaintiff, even assuming that subsections (a) and (b) pass constitutional muster, the addition of subsection (c) to the Act makes an otherwise valid Moment of Quiet Reflection in Schools Act un-

constitutional under all three prongs of the *Lemon* test.

Plaintiff Bown has not challenged subsection (c) as applied in any actual factual context nor provided any facts related to subsection (c). There is no evidence of any oral or audible prayer occurring during the moment of silence or any evidence of any student-initiated voluntary school prayer of any kind, at any time, at any school or any school event in this case. There is no evidence that any teacher or student sought to foster such. Instead, Plaintiff only asserts various hypothetical fact situations where subsection (c) might be applied in the future in a way that would violate the Constitution. The Court finds that given this record, Plaintiff's constitutional challenge is necessarily primarily whether the language of subsection (c) itself is facially unconstitutional and whether subsection (c) injects an unconstitutional religious purpose, endorsement or entanglement of religion into subsections (a) and (b).[20] This Court finds that subsection (c) is not unconstitutional for several reasons.

First, subsection (c) is not affirmatively authorizing, implementing, favoring, or prohibiting any activity. Subsection (c) merely provides that "[t]he provisions of subsections (a) and (b) of this Code section shall not prevent student initiated voluntary school prayers at schools or school related events which are nonsectarian and nonproselytizing in nature." O.C.G.A. § 20–2–1050(c) (Supp. 1995). Subsection (c) provides only that the moment of silence shall not prevent such activity. In fact, this Court does not need necessarily to reach the issue of whether such activity is or is not constitutional, as subsection (c) does not authorize or provide for the implementation of any such activity. If anything, subsection (c) further demonstrates, not destroys, the secular purpose of the Act, as subsection (c) distinguishes and separates the moment of silence authorized

dorsement of religion. The Supreme Court has recognized that anytime the government endorses religion or becomes excessively entangled with religion, there is an impermissible coercive effect. *Id.*

**20.** The Supreme Court's analysis of alleged constitutional violations of the Establishment Clause has been and continues to be fact specific and dependent on context. *See* discussion *infra* at pp. 1580–83, 1585–86.

by the Act from student-initiated voluntary prayer.

Second, the language of subsection (c) has no effect except to clarify subsections (a) and (b). Subsection (c) does not require student-initiated voluntary prayer nor does it state that nonsectarian and nonproselytizing prayers are the only type of student-initiated prayer that will be tolerated. Subsection (c) refers only to voluntary prayer and does not require any student to engage in prayer or to listen to the prayer of another student or teacher. Subsection (c) does not provide a place or opportunity for students to pray. The Act does not designate particular circumstances under which any student may pray. No time or place is set aside for the purpose of prayer. Subsection (c) on its face does not permit or authorize students to lead other students in prayer as a part of the curriculum or as a regular part of the school day or as part of any school event. Subsection (c) does not authorize any school personnel to direct, participate in or encourage student prayer at any time. Subsection (c) only clarifies what subsections (a) and (b) do not prevent, and does not authorize or prescribe or mandate by legislation that schools allow student-initiated voluntary prayer in certain situations. The primary effect of subsection (c) is not to advance religion, or to convey a government message endorsing religion, in contravention of *Lemon's* second prong, but is only to clarify what subsections (a) and (b) do not prevent.

Third and alternatively, even if subsection (c)'s language indirectly or impliedly appears to condone student-initiated voluntary prayer which is nonsectarian and nonproselytizing,

the specific language of subsection (c), given its context, facially suffers no constitutional infirmity under the Establishment Clause. Subsection (c) is included in a statute, entitled "Moment of Quiet Reflection in Schools Act," that focuses on a moment of quiet reflection. The Act is not a statute which states solely that all schools shall set aside a specific time for student-initiated voluntary prayer that is nonsectarian and nonproselytizing or that schools shall not allow any other type of prayer. In contrast, the Act provides for the moment of silence in subsection (a), then provides in subsection (b) that the moment of silence is not intended as a religious exercise but is an opportunity for silent reflection "on the anticipated activities of the day." O.C.G.A. § 20–2–1050(b) (Supp. 1995). Subsection (c) then clarifies that this moment of silence shall not prevent student-initiated prayer that is nonsectarian and nonproselytizing. While a student must be silent during the brief period of quiet reflection provided for in subsections (a) and (b), subsection (c) clarifies that subsections (a) and (b) are not intended to prevent any student-initiated voluntary prayer permitted under the Establishment Clause in certain appropriate factual situations. *See Board of Educ. of Westside Community Sch. v. Mergens*, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990). Given the overall context of the Act, the Court finds that subsection (c) does not endorse religion or favor one religion over another and is not constitutionally vague, but is facially constitutional.[21]

Additionally, the Court is aware of no cases that prohibit a general statutory recognition of free exercise rights on Establish-

---

**21.** Where "student initiated voluntary prayer" referred to in subsection (c) is oral or audible during the brief period of quiet reflection, it would violate subsections (a) and (b). It would be neither quiet nor silent as required by (a) and (b). A teacher or student's leading oral or audible prayer, even if nonsectarian and nonproselytizing, during the moment of quiet reflection mandated by the Act would be conducting a "religious exercise," in violation of subsection (b). Thus, oral or audible prayer is not incorporated into the conduct of the moment of quiet reflection. The Defendant Gwinnett County School District interpreted and implemented the statute in this way, instructing its personnel not to permit audible prayer or religious conduct.

Subsection (c) of the Act thus only clarifies that the Act should not be interpreted as preventing oral or audible student-initiated voluntary prayer in appropriate contexts (other than the formal moment of silence provided for in subsections (a) and (b)). If subsection (c) impliedly or indirectly authorizes oral or audible student-initiated voluntary prayer (other than during the moment of silence), it does not violate the Establishment Clause as such student-initiated voluntary prayer is authorized in certain circumstances under *Board of Education of Westside Community Sch. v. Mergens*, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990), discussed *infra* at pp. 1582–83.

ment Clause grounds.[22] Although it is true that some government action which seeks to "accommodate" religious values has been held to violate the Establishment Clause, *Illinois ex rel. McCollum v. Bd. of Educ. of Sch. Dist. No. 71, Champaign County, Illinois*, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948), subsection (c), as a simple statement of the free exercise principle, does not even require an "accommodation" of religious values in the usual sense of the word. It does not describe a practice or policy "whereby government steps aside or creates an exemption in order to produce free exercise neutrality." TRIBE, AMERICAN CONSTITUTIONAL LAW, 1988, § 14–4, at 1168 n. 12 (2d ed.1988) (citing *Zorach v. Clauson*, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952) (upholding practice of released time for prayer off campus)). In the majority opinion in *Jaffree*, the Supreme Court indicated it would approve of a statute which "merely protect[s] every student's right to engage in voluntary prayer...." *Jaffree*, 472 U.S. at 59, 105 S.Ct. at 2491.

The recent decisions by the Supreme Court in *Board of Education of Westside Community Sch. v. Mergens*, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990), and *Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), also provide guidance in analyzing the constitutionality of student-initiated religious expression (if arguably such is impliedly or indirectly con-

doned by subsection (c)). In *Mergens*, the Supreme Court upheld the right of a student Christian Club to use school facilities during non-instructional time to the same extent other student groups could use school facilities. The Christian Club's purpose was "to permit the students to read and discuss the Bible, to have fellowship, and to pray together." *Mergens*, 496 U.S. at 232, 110 S.Ct. at 2362. A plurality of the Supreme Court concentrated on the effects prong of *Lemon* and held that allowing noncurriculum school groups, such as the student Christian Club, to use the school premises and to engage in student-initiated voluntary school prayer at school did not have the primary effect of advancing religion. Thus in *Mergens*, the school was not allowed to prohibit the students from engaging in student-initiated voluntary prayer at the meeting of the Christian Club on the school premises. In contrast in *Weisman*, the Supreme Court held that prayer at a graduation ceremony does not pass constitutional muster where a principal invites a clergyman or rabbi to speak at the graduation ceremony. *Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992).[23]

When applying the *Lemon* test, *Mergens* and *Weisman* appear to allow oral or audible student-initiated religious expression at school or a school event, where the student attends the school event for the purpose of a

**22.** Recent Congressional legislation is instructive in this regard. In Goals 2000: Educate America Act, 20 U.S.C. § 6061 (1994), states or local school systems are prohibited from adopting "policies that prevent voluntary prayer and meditation in public schools." Subsection (c) of the Act is similar.

**23.** Prior to *Weisman*, the Eleventh Circuit had held already that invocations at football games violated the Establishment Clause. *Jager v. Douglas County Sch. Dist.*, 862 F.2d 824 (11th Cir.1989). After the Supreme Court held in *Weisman* that school organized prayer at graduation violates the Establishment Clause, students themselves began organizing graduation prayers. In *Jones v. Clear Creek Indep. Sch. Dist.*, the Fifth Circuit upheld the students' choosing volunteers to deliver nonsectarian, nonproselytizing invocations at their graduation ceremonies, and the Supreme Court denied *certiorari*. *Jones v. Clear Creek Indep. Sch. Dist.*, 977 F.2d 963 (5th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2950,

124 L.Ed.2d 697 (1993); *see also Randall v. Pegan*, 765 F.Supp. 793 (W.D.N.Y.1991) (upholding student-initiated baccalaureate service organized in the school auditorium). In contrast, the Ninth Circuit held that student-initiated prayer at a graduation ceremony violates the Establishment Clause, even where a majority of the students vote for it. *Harris v. Joint Sch. Dist. No. 241*, 41 F.3d 447 (9th Cir.1994), *vacated as moot*, —— U.S. ——, 115 S.Ct. 2604, 132 L.Ed.2d 849 (1995). One commentator notes that after *Weisman*, the Third Circuit in *ACLU v. Blackhorse Pike Regional Bd. of Educ.*, Docket No. 93–5868 (3d Cir. June 28, 1993) (no opinion), also "issued an injunction in June, 1993 prohibiting all prayer at a New Jersey high school graduation ceremony even though a majority of students had voted to include it. Justice Souter, acting as circuit judge, denied the school board's application for review and allowed the injunction to stand." Note, Christina Engstrom Martin, *Student–Initiated Religious Expression After Mergens and Weisman*, 61 U.CHI.L.REV. 1565, 1571 (1994).

religious activity or for the purpose of voluntary prayer, such as attending a religious prayer group club, or a student-organized baccalaureate service at school, or a prayer at the flagpole before school, but prohibit it at a school forum if the school event does not have a primarily religious purpose, such as at a graduation ceremony or a football game. An important distinction seems to be that the student is attending the school event that involves voluntary prayer in order to participate primarily in a religious exercise, such as a prayer group or religious club, or a prayer at the flagpole prior to the start of the school day or a student-organized baccalaureate service in the school auditorium. As long as the *Lemon* test survives, the analytical shift seems to be away from student-initiated religious expression based on whether the student is voluntarily attending a graduation ceremony or football game to inquiring whether the student is attending the school event primarily for the purpose of a religious exercise, such as oral or audible voluntary prayer.[24]

Subsection (c) provides only that the moment of silence is not intended to prevent student-initiated voluntary prayer, but does not affirmatively authorize or implement any activity. However, if subsection (c) does so indirectly or impliedly, it will be up to the individual school districts to issue, in the future, their own guidelines for where such student-initiated voluntary prayer may or may not occur, and then any challenges to such student-initiated voluntary prayer will

have a factual context. Analysis of student-initiated voluntary prayer by the Supreme Court under *Lemon* has been and continues to be fact specific and dependent on context. At this juncture, a statute that simply states that the moment of silence does not prevent student-initiated voluntary prayer that is nonsectarian and nonproselytizing does not have the primary effect of endorsing religion, much less create an excessive government entanglement with religion as explained in more detail *infra.*

Since subsection (c) of the Moment of Quiet Reflection in Schools Act recognizes only that the moment of silence does not prevent student-initiated voluntary prayer, does not provide a time or opportunity for any such prayer, and does not preclude any other types of prayer, subsection (c) does not contain an impermissible endorsement of religion and does not impermissibly favor one form of religion over another. As stated by the plurality opinion in *Mergens,* "[t]he proposition that schools do not endorse everything they fail to censor is not complicated." *Mergens,* 496 U.S. at 250, 110 S.Ct. at 2372. There is little risk of official state endorsement or entanglement where the Act does not set forth any time or opportunity for such prayer, much less require or organize it.[25]

### 4. Excessive Government Entanglement

 *Lemon's* third and final prong requires this Court to determine whether Geor-

---

**24.** Likewise, the Eleventh Circuit has indicated that whether a student's attendance at a football game is voluntary is not relevant to the Establishment Clause analysis. *Jager v. Douglas County Sch. Dist.,* 862 F.2d 824, 832 (11th Cir.1989). This analysis of *Mergens* and *Weisman* and the distinction between attending a school event for the purpose of participating in an religious exercise versus attending a football game or a graduation ceremony are discussed in Christina Engstrom Martin's Note: *Student–Initiated Religious Expression After Mergens and Weisman,* 61 U.Chi. L.Rev. 1565, 1580–91 (1994).

**25.** The severability provision in the Act further underscores that the Act has a secular purpose, that the Act does not convey a government endorsement of religion, and that the limited role of subsection (c) is to clarify what (a) and (b) meant, but not to implement any activity de-

scribed in (c). Moment of Quiet Reflection in Schools Act, § 5, 1994 Ga. Laws 256, 257 (1994). The structure of the final bill and the inclusion of the severability provision demonstrate that the Georgia General Assembly as a whole was content for subsections (a) and (b) to be enforced without subsection (c). If the Georgia General Assembly was content for subsection (c), the only portion of the Act mentioning "prayer," to be severed and removed from the Act, Plaintiff Bown's argument that the inclusion of subsection (c) exposes the true purpose to return prayer to the classroom fails.

Subsections (a) and (b) mandate certain action, while subsection (c) simply explains what is not meant or intended to be prohibited by the mandate of (a) and (b). Severance of subsection (c) will have no effect on the actual conduct of the moment of silence—the only affirmative mandate of the Act—which is explicitly not to be conducted as a religious exercise.

gia's Moment of Quiet Reflection in Schools Act fosters "an excessive government entanglement with religion." *Walz v. Tax Comm'n of City of New York,* 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970). Generally, excessiveness is a question of degree and is often referred to as administrative entanglement. Some governmental activity that does not have an impermissible religious effect may nevertheless be unconstitutional if, in order to avoid the religious effect, government must enter into an arrangement which requires it to monitor the activity. *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); *see also Levitt v. Committee for Pub. Educ.,* 413 U.S. 472, 93 S.Ct. 2814, 37 L.Ed.2d 736 (1973); *Nartowicz v. Clayton County Sch. Dist.,* 736 F.2d 646, 649 (11th Cir.1984) (citing *Americans United for Separation of Church and State v. School Dist. of the City of Grand Rapids,* 718 F.2d 1389 (6th Cir. 1983)). Forbidden government entanglement normally takes the form of excessive government administration, monitoring, or surveillance of religious activities or institutions or personnel.

While this inquiry is a distinct and separate prong under *Lemon,* the factors considered by the Court under the second prong are applicable to the Court's analysis on this final part of the *Lemon* test. All of the reasons discussed above demonstrate that Georgia's Moment of Quiet Reflection in Schools Act does not foster an excessive government entanglement with religion.

Plaintiff asserts that because subsection (c) refers to student-initiated voluntary prayer that is only nonsectarian and nonproselytizing, then the Act is impermissibly favoring nonsectarian and nonproselytizing prayer over sectarian and proselytizing forms of religious activity. According to the Plaintiff, school officials will have to intervene and monitor the type of prayer that is permitted under the Act, creating excessive government entanglement with religion. This argument is without merit. Plaintiff's contention expands the Act well beyond what the Act

actually says. Subsection (c) states only that nothing in subsections (a) and (b), i.e., the moment of silence, shall prevent student-initiated voluntary school prayer that is nonsectarian and nonproselytizing. The Act nowhere states that sectarian and proselytizing or any other type of prayer will not be allowed or that only nonsectarian and nonproselytizing prayer will be allowed, either directly or by implication. Subsection (c) states only what the moment of silence does not prevent, but does not authorize, favor, or prohibit anything else.

Plaintiff contends that implementation of the moment of silence and specifically subsection (c) will require school officials to monitor the moment of silence and preclude some students from orally or audibly praying and to decide what conduct conforms to subsection (c) and what does not. Plaintiff contends this creates excessive entanglement, citing *Nartowicz v. Clayton County School District,* 736 F.2d 646 (11th Cir.1984), and *Jager v. Douglas County School District,* 862 F.2d 824 (11th Cir.1989). This contention is also meritless. The Act authorizes only silence and not any oral or audible prayer. In fact, there is no evidence of any oral or audible prayer by any student or teacher during the moment of silence in this school system. Implementation of the moment of silence each day, where the only suggestion, in the Act and by the Defendants in implementing the Act, is that the students silently reflect on "the anticipated activities of the day," simply does not require the state or its officials to be involved in religion at all, much less excessively so. In fact, the Act directs the Defendants not to conduct the moment of silence as a religious exercise. A school teacher's directing school children to be silent for sixty seconds does not violate the Establishment Clause.

In addition, while the *Lemon* test discussed in *Jager* and *Nartowicz* is applicable here, the facts and issues in those two Eleventh Circuit decisions are totally different from this case. *Jager* involved mandatory invocations at high school football games,[26]

---

26. Plaintiff Bown incorrectly contends that the school practice in *Jager* was totally permissive in nature. Whether the student did or did not go to

the football game was voluntary, but the school mandated that some type of invocation be given at the football game. *Jager v. Douglas County*

and *Nartowicz* concerned a school district's allowing a student religious group to meet on school property after school under faculty supervision and permitting churches to announce church-sponsored activities on school bulletin boards and over the school's public address system. *Jager v. Douglas County Sch. Dist.*, 862 F.2d 824 (11th Cir.1989); *Nartowicz v. Clayton County Sch. Dist.*, 736 F.2d 646 (11th Cir.1984). Additionally, in *Nartowicz*, the Eleventh Circuit noted that in *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), the Supreme Court held that permitting a concededly religious group to meet on school property would not violate the Establishment Clause. *Nartowicz*, 736 F.2d at 648. The Eleventh Circuit held that the school district's policy of allowing religious groups to meet on school property, however, must be evaluated in light of the school's other activities of allowing religious signs and announcements of church-sponsored activities via bulletin boards and public address systems. The Eleventh Circuit affirmed the district court's grant of the preliminary injunction, finding that the district court did not abuse its discretion in finding a likelihood of excessive entanglement. The Eleventh Circuit noted, however, that in considering the permanent injunction the district court should "explore more fully several avenues of inquiry in determining the propriety of permanent relief. The ultimate question, of course, is whether the school district merely accommodates, as opposed to

endorses, the YFC [Youth For Christ Group]." *Nartowicz*, 736 F.2d at 649.

In contrast to *Nartowicz*, there is no evidence here of any other alleged religious activity conducted or allowed by the Defendant school district other than announcing the moment of silence over the intercom at the beginning of the school day. There is no evidence in this case of any religious activity by any of the students for any teacher to monitor in any way. *Nartowicz* does not compel a different result here under any analysis.[27]

Constitutionality of prior statutes and resolutions have turned, in large part, on the facts of the particular case. All of the recent Establishment Clause cases recognize the "fact-sensitive" nature of the inquiry in applying the *Lemon* test. The outcome of some Establishment Clause cases under *Lemon* turns so slightly depending on the unique facts of a particular case. This entire record contains no incident or evidence of any oral or audible student-initiated voluntary prayer at school or at any school event. The record contains only evidence of implementation of the sixty second moment of silence at the beginning of the school day only and no evidence of implementation of any student-initiated voluntary prayer. Arguably, this is because, as outlined above, subsection (c) is not authorizing any particular activity during the moment of silence or at a school at any specific time, but merely providing that the moment of silence shall

*Sch. Dist.*, 862 F.2d 824, 826–28 (11th Cir.1989). All school clubs and organizations could designate club members to give invocations and any student, parent or school staff member could seek to deliver the invocation. *Id.* The plan specified the student government would randomly select an invocation speaker. *Id.* at 827. The district court had found that one purpose of the pregame invocation was "to publicly express support for Protestant Christianity" and that this school plan permitted religious invocations as opposed to "wholly secular inspirational speeches about sportsmanship, fair play, safety and the values of teamwork and competition." *Jager*, 862 F.2d at 829 (footnote omitted).

**27.** Since *Nartowicz* in 1984, the Supreme Court has given significant additional guidance for public school cases involving the Establishment Clause. *See Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (disallowing school-sponsored invocations at graduation cere-

monies); *Board of Educ. of Westside Community Sch. v. Mergens*, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990) (allowing a Christian club to use school facilities for voluntary prayer); *Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985); *Lynch v. Donnelly*, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). In *Nartowicz*, the religious group met on school property under faculty supervision, and the school allowed church announcements on school bulletin boards and public address systems; however, neither the faculty supervision nor the churches' using bulletin boards and public address system was present in *Mergens*, where the Supreme Court upheld a student religious group's meeting and praying on school property. *Compare Nartowicz*, 736 F.2d at 649 *with Mergens*, 496 U.S. at 231–34, 110 S.Ct. at 2362–63. The Establishment Clause decisions are fact specific.

not prevent such activity. Alternatively and arguably, if subsection (c) somehow indirectly authorizes anything, subsection (c) on its face permits only conduct protected by the First Amendment, does not impermissibly endorse, favor, or prohibit one religion over another, and passes constitutional muster. The Supreme Court has held repeatedly that a reference to prayer in a statute does not *ipso facto* make a statute unconstitutional or impermissibly endorse religion or have the primary effect of conveying a message endorsing religion.

In sum, this Court finds that subsection (c) does not authorize, implement, favor, or forbid any activity but only states what subsections (a) and (b) are not preventing. In any event, there is no evidence of any implementation of subsection (c) in this case, and courts should not decide cases in a vacuum. The State of Georgia would risk greater entanglement by attempting to enforce a rule that prevented all student-initiated voluntary school prayer. Subsection (c) does not confer any imprimatur of state approval or endorsement of prayer, especially since it does not set aside any time or opportunity for such but only recognizes that the moment of silence does not preclude the student's constitutional right to pray and exercise the student's religion.

### III. *CONCLUSION*

After applying *Lemon's* tripartite criteria, this Court finds that Georgia's Moment of Quiet Reflection in Schools Act in its entirety is constitutional, both facially and as applied here, and does not violate the Establishment Clause of the First Amendment of the United States Constitution.

Therefore, this Court DENIES Plaintiff Bown's Complaint, Amended Complaint, and Second Amended Complaint for a Permanent Injunction [1–1 and 20–1] and DENIES Plaintiff Bown's request to enjoin the enforcement of Georgia's Moment of Quiet Reflection in Schools Act in O.C.G.A. § 20–2–1050 (Supp.1995) as to all Defendants.

The Court GRANTS the Motion for Summary Judgment [19–2] of the Defendants Zell Miller, in his official capacity as Governor of the State of Georgia, and Michael Bowers, in his official capacity as Attorney General of the State of Georgia. The Court DENIES the Motions to Dismiss [19–1] of the Defendants Zell Miller and Michael Bowers in their above official capacities. The Court directs the Clerk to enter final judgment in favor of Defendants Zell Miller and Michael Bowers on Plaintiff Bown's Complaint, Plaintiff Bown's Amended Complaint, and Plaintiff Bown's Second Amended Complaint.

IT IS HEREBY ORDERED.